### IN THE

# SUPREME COURT

### OF THE

# TERRITORY OF WYOMING.

---

## JANUARY TERM, 1889.

---

CULVER *et al.* v. GRAHAM *et ux.*

(January 22, 1889.)

RESULTING TRUSTS—FRAUDULENT CONVEYANCES—
HUSBAND AND WIFE.

1. Evidence that a wife loaned her husband money with which to buy oxen; that he bought the oxen, it not being shown that he did not take the title in his own name; and that he exchanged a part of them for land, the title to which he took in his own name,—does not establish a resulting trust[1] in the wife, especially where the wife's testimony as to the purchase of the property is contradictory, and it appears that the husband had presented in his own name a claim against the government for part of the oxen stolen by Indians.

2. Even if such a trust were established, the wife would be estopped to set it up as against the husband's creditors, where she has allowed him to occupy and use it and deal with it as his own, obtaining credit on his reputation as its owner for nine years.

3. The husband and wife, at a time when the husband was insolvent, conveyed the property for a specified consideration, none of which was paid, to a third person, who was worth less than the amount specified, on his recited assumption of an existing mortgage on the property, and promise to pay the balance, without security, and reserving no lien. The wife's testimony as to the amount of the consideration differed from that recited in the deed, and she testified that the third person gave his note therefor. The third person did not take possession of the property, but on the following day reconveyed it to the wife, in consideration, as both he and the wife testified, of the cancellation of his note, and the payment of a certain sum as profit. The third person had not examined the title, did not know the amount of interest due on the mortgage which he purported to assume, and afterwards spoke of the transaction as the manner in which the husband put the title to his property in his wife. *Held*, that the transaction was fraudulent as to the husband's creditors.

4. Such transaction is fraudulent as to creditors of the husband whose claims are represented by negotiable paper executed by him prior thereto, and which the creditors have purchased, though it does not appear that they purchased such paper before the transaction.

Appeal from district court.

Bill to set aside a deed, and to obtain possession of real property, by James M. Culver and Mowrey A. Arnold against Jeremiah Graham and Hannah Graham, his wife. Decree for defendants, and complainants appeal. Reversed, and decree directed.

*C. N. Potter* and *Willis Van Devanter*, for appellants. *Hugo Donzelmann* and *Allen Miller*, for appellees.

[1] See note at end of case.

Culver v. Graham.

SAUFLEY, J. The defendant and appellee Jeremiah Graham, on the 24th day of October, 1883, held the legal title to a house and lot in the city of Cheyenne, which he had acquired about nine years previously by a deed of conveyance from Posey Wilson. In the year 1877, while thus holding the legal title, he became indebted upon an accepted bill of exchange to Appelgate & Sons, of Louisville, Ky., and by promissory note to Jacob P. Weybrecht. The holders of these negotiable instruments subsequently, but at a date which is not disclosed by the record, indorsed and delivered them to the appellants, who on the 10th day of January, 1884, instituted this action in the district court for the recovery of the amount due them, and contemporaneously therewith obtained an attachment, which was levied upon the property mentioned, and which is now the subject of this controversy. In this action personal judgment was rendered against Graham, the ground of attachment sustained, and the sheriff was directed to sell the property for the satisfaction of the judgment and costs. Acting under this judgment, and by virtue of a special execution, the sheriff, proceeding regularly, sold the property, and appellants, being the accepted bidders, became the purchasers. The sale was confirmed by the court, a deed was ordered and made, conveying all the right and interest which Graham had in the property at the date of the attachment levy. When the property was offered by the sheriff at public vendue, Hannah Graham, wife of Jeremiah, appeared, and forbade the sale, claiming for herself the sole and exclusive ownership of the property. Being jointly with her husband in possession, she refused to surrender to the purchasers, who it appears did not apply on the confirmation of their deed, as they might have done, for the writ of *habere facias* or other appropriate execution to put them into the possession of the property which the court by its officer had sold to them, but sought their remedy by a bill in chancery, assailing the alleged title and ownership of the wife, and praying that she and her husband be adjudged to surrender possession to them.

The appellants claiming the legal estate and the right of entry, it would seem that for them the action of ejectment was the more appropriate remedy; but since the ap-

pellees appeared in the court below, and without objection to the form of procedure filed their answer controverting the material allegations of the bill, inquiry upon this feature becomes unimportant. It is alleged in the bill that at the time of the acceptance by Jeremiah of the bill of exchange, and at the time of the execution by him of the promissory note, he was the owner and in the possession of the house and lot; that on the 24th day of October, 1883, the debt still being unpaid, he and his wife, Hannah, without consideration, and with the fraudulent intent to hinder and defraud the husband's creditors, conveyed the property to A. S. Emery, and on the following day Emery, with intent to aid in the execution of the fraudulent design, conveyed the property to the wife. The Grahams filed their joint answer, denying the fraud, averring the *bona fides* of the transaction, and, in addition, in a rather vague way, affirmatively declaring the sole and exclusive ownership by the wife of the property, not only at the date of the attachment levy, but for a long time prior thereto. The testimony upon the issue thus framed took a wide range. Much of it was conflicting, a part of it irrelevant, and a portion incredible from its intrinsic improbability. The pleadings, strictly construed, would leave but one issue for determination,—the question of fraudulent intent in the conveyances to and from Emery; but inasmuch as the cause appears to have been prepared with reference to the rather indefinite allegation by the wife of exclusive ownership in herself, even prior to the conveyance to her by Emery, this question will be considered equally with the other.

There can be no pretense that the legal title was ever vested in the wife prior to the 25th day of October, 1883,—the date of the Emery deed. The utmost right that can be claimed for her antecedently arises out of the doctrine of resulting trusts. It is claimed by both herself and husband that she furnished the money to pay for the property in contest when it was bought from Wilson about the year 1874, and that the deed, through their ignorance of the law, was made to the husband. It is an accepted rule of equity jurisprudence that when property is purchased in the name of one party, and the purchase price is actually paid at the time by another, a

Culver v. Graham.

trust results in favor of the latter. It is equally the rule that the payment of the money by the *cestui que trust* must be clearly proven, and must have been made at the time of the purchase or a part of the original transaction of purchase. The easy possibility of the successful perpetration of a fraud, to the injury of creditors when equitable interests are claimed by reason of a resulting trust, has led the courts of equity jurisdiction to establish, by a complete unanimity of decision, the rule that the evidence of the payment by the beneficiary "must be clear, strong, unequivocal, unmistakable, and beyond doubt." 2 Pom. Eq. Jur. § 1040. Indeed, several states of the Union have been so strongly impressed by the impolicy of this particular form of resulting trusts that they have by legislation abolished it. Indiana, Kansas, Kentucky, Minnesota, Michigan, New York, and Wisconsin have all concurred in similar forms of legislation, of which the Kentucky statute seems to be a type: "When a deed shall be made to one person and the consideration shall be paid by another, no use or trust shall result in favor of the latter; but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person." Gen. St. c. 63, art. 1, § 19. The trust here abolished is that which results or leaps back to the *cestui que trust*, leaving the trust, by construction, to arise out of either the actual or constructive fraud perpetrated by the grantee. This legislation is referred to, not because of any supposition that it in any wise governs the rights of the parties to this controversy, but only to show the trend of modern legislative opinion upon the doctrine which is here invoked.

Guided, therefore, by those general principles which have become fundamental in our system of equity, it becomes necessary to closely examine the testimony by which the appellees undertake to establish the trust in favor of the wife. As shown by the evidence, they are both negroes. While this fact neither enlarges nor diminishes their rights under the law, it is not improper that a court of conscience should consider the circumstances of their birth, their meager opportunities for education, their unfavorable environment during a portion of their lives, the ungracious dispensations to which they were long subjected, and to soften, in their favor, as far as may be done without a violation of duty, the rigor of the general rules of law. To extend, however, this spirit of kindly consideration to the point where sentiment shall take the place of law would be not only wrong in itself, but might, as a precedent, prove disastrous in the end to the race of which appellees are representatives.

It seems to be a capital point in the testimony of each of them to establish the character of the wife as a female of unusual thrift, industry, business tact, and acquisitiveness, who, during the entire period of their marital life, has been the financial guide and manager of the majority of their business adventures, while it is agreed by them, with the most interesting, though rather suspicious, harmony, that the husband, by exercising a poor judgment, not only lost a very considerable personal estate of which the wife was possessed at the time of their marriage, but that his subsequent enterprises were fruitless of good results, and that for years he has been handicapped by general thriftlessness, a want of shrewdness, enterprise, and sagacity. Judged, however, in the light of what the husband is proven to have accomplished, the delineation is overdrawn. He himself, in the account given of his life, proves that in the year 1853, and when quite a lad, living with his master near Nashville, Tenn., he had the nerve to make a break for his freedom, the sagacity to thread his way through Tennessee, Kentucky, and the Northern states, evading the officers of the law, and finally, in spite of the fugitive slave law, to reach Canada in safety. There he remained until 1858; then moved to the state of Michigan, thence to Pennsylvania, where in 1862 he married his wife. This feature of personal history is utterly inconsistent with the character for shiftlessness and lack of enterprise he is so willing to ascribe to himself, and as to which, at least outside the domestic circle, he is in such happy accord with his wife, though differing widely on other matters. The testimony is that, when he married, his wife had $3,300 in money, which he obtained from her at different times, and which he lost in unlucky investments at Oil

Culver v. Graham.

City, Pa. Though some prominence is given to this fact in the testimony, it has no influence in determining the controversy. By the common law, which, we assume, in absence of any cited authority to the contrary, prevailed at that time in Pennsylvania, the husband becomes the absolute owner of all the wife's money, goods, and chattels and choses in action which during coverture he reduces to possession, and her only remedy against this law, where no marriage settlement has been made, is a right to a provision out of her own property known as the "wife's equity to a settlement." The relief which the wife, Hannah, is here seeking is not for an equitable settlement, and, if it were, it could not be granted, because that doctrine applies only before the husband has reduced the wife's property to possession.

In the year 1868 Graham and wife came to the territory of Wyoming. Arriving here, they found that the fetters of the common law had been broken by statutory enactment. A married woman was entitled, to the exclusion of her husband, to all the property she could earn by industry, or which she might acquire by deed, devise, descent, or distribution. Here, according to their concurring narrative, every labor of the wife's hands received a rich remuneration. Beginning penniless, by her skill as a laundress, though paying 75 cents per barrel for water and the same price per pound for soap, in a country where, and at a time when, the costs of living were more exorbitant than the price of water, she soon acquired lands, houses, wagons, teams, mules, cattle, and other personal property, and besides gave to her husband $50 every month for three years to maintain him in the habits of a gentleman, either in seasons of idleness or misadventure. Meanwhile, however, the husband was occasionally moved by sporadic freaks of industry, and worked with a right good will at hauling wood, chopping, well-digging, and other like employments. It sufficiently appears that, after a lapse of a few years, wagons and teams had been acquired either by their separate or by their joint industry. In 1873-74 the husband was engaged in a contract to haul wood to Ft. Laramie. While thus engaged he testifies that his wife furnished him with $600, with which he bought seven yoke of oxen. These, added to several

teams he already had, increased his opportunity for a profitable prosecution of his Ft. Laramie contract. In 1874 he left this place, and went to Cheyenne, having at the time either nine head or nine yoke of oxen, and it is impossible from the transcript to tell which, as the witness has used the word "head" and the word "yoke" interchangeably. At any rate he arrived in Cheyenne with only a remnant of his cattle. A part had been stolen by the Indians, on which point it is to be noted that the claim filed by him with the United States government for the value of the stolen stock was in his own name as the owner of the stock, and not in his wife's name as the owner. He further testifies that of the remnant of the stock he exchanged a portion with Wilson for a deed to the property in controversy. Thus it appears that the utmost which can be claimed for the wife is that she loaned her husband money to buy oxen, that he bought the oxen, and, so far as anything to the contrary is shown, took the title to himself, and subsequently exchanged them for Cheyenne property. To hold that a trust in favor of the wife would result from this transaction would commit the court to the duty of finding a trust in favor of every other creditor of her husband.

Upon this branch of the case the testimony of the wife is radically different from that of her husband. On page 49 of the record she says, in answer to the question "Who purchased that property?" "I gave Mr. Graham money to purchase the property. *Question* 16. How much did you give him? *Answer.* Four hundred dollars." On pages 61, 62, under cross-examination, she gives the following account of the transaction of purchase, which it will readily be observed is utterly unlike her first version. "*Question* 142. During the time Mr. Graham and yourself lived at Laramie, what was Mr. Graham's business? *Answer.* Teaming. *Q.* 143. Was he teaming with his own teams? *A.* He had but one team the first winter. *Q.* 144. How many teams did he have the other winters and summers? *A.* Two mule teams and one horse team. *Q.* 145. What became of that property? *A.* Indians stole the mule team. *Q.* 146. When? *A.* In 1872. *Q.* 147. What became of the other teams? *A.* After he brought them

Culver v. Graham.

down here [Cheyenne] he sold one of them to pay for the building I am in. *Q.* 148. Is that the property that is in controversy in this case? *A.* Yes, sir." With such testimony as this offered by her to establish her latent equity, it is needless to say that the court cannot hold that the payment by the wife of the purchase money is clearly, unmistakably, and unequivocally proven.

But, even on the assumption that the testimony removed all reasonable doubt of her payment of the consideration, we do not perceive how the trust could avail her in this action. Married women, with all the disabilities of coverture which are imposed by the common law, may, under divers circumstances, be estopped from asserting their rights either of property, of control, or of remedy, although such rights may primarily have clearly existed. To borrow the familiar phrase, her coverture was intended to be used as a shield, never as a sword. For much stronger reason may the doctrine of estoppel be applied within those jurisdictions where their property is freed from the control of their husbands, and they, by legislation, have been made persons *sui juris.*

In the case at bar the legal title to the property in contest was, by the knowledge and consent of the wife, vested in the husband in the year 1874. The evidence of this was before the public. He occupied it, and publicly carried on business in it in his own name. He listed it for taxation as his property. He paid taxes on it as his property, borrowing money from his wife for this purpose, and subjecting himself to her complaint that he did not pay the money back. He publicly spoke of it as his property. He executed mortgages on it as his property. He redeemed it from the incumbrance of the mortgage as his property. He borrowed money and created debts on the representation and general belief that it was his property. This conduct ran through a period of nine years. During the whole time his wife lived with him under the same roof, and must have been cognizant of these facts. Indeed, she has in her testimony, already referred to, spoken, if not boastfully, at least confidently, of her business sagacity, and the general supervision which she exercised over the affairs of her husband. Having thus, for so long a time, made a pillow of her rights, she cannot now erect them into a pillar of testimony against her husband's creditors.

In Besson v. Eveland, 26 N. J. Eq. 472, the court, in speaking of the claim advanced by the wife, that the property attached by her husband's creditors was originally purchased with her money, says: "Claims of this kind should always be regarded with a watchful suspicion, and when attempted to be asserted against creditors upon the evidence of the parties themselves, uncorroborated by other proof, they should be rejected at once, unless their statements are so full, clear, and convincing as to make the justice and fairness of the claim manifest. Any other course will encourage fraud, and multiply the hazards of most business ventures." In Moyer v. Adams, 9 Biss. 394,[1] the following language is used: "It may be questionable, where the wife has permitted the real estate to remain for a long time in the name of her husband, has permitted him to exercise apparently the sole control over it, and treat it as his own, with all the *indicia* of ownership, for a series of years, thus holding himself out to the world as the owner of the property, and trading and doing business upon the faith of such ownership, whether we ought, on principle, to sustain a conveyance to the wife, under such circumstances."

The remaining question on which the solution of this controversy depends is, were the deeds from Graham and wife to Emery, and from Emery to the wife, executed in pursuance of a fraudulent purpose to defeat the creditors of the husband? This intent is to be ascertained, not so much by what the parties say, as by the facts and circumstances attending the conveyances. When persons are consciously guilty of an unlawful design, it is not to be presumed that they will voluntarily confess it before the courts. And so, even if all three of these parties did in fact conceive and execute a purpose to thwart the creditors of Jeremiah Graham, it may be reasonably anticipated that they would, as they have done, with much emphasis deny it. We are, however, constrained to the conclusion that the whole of their testimony upon this point convicts them of this purpose. An extended review of their evidence, showing its improbabilities and contradictions, would

[1] 2 Fed. Rep. 182.

Culver v. Graham.

be unprofitable. At the time of the conveyance to Emery, Graham was certainly insolvent. Executions had been levied upon his property in favor of other creditors only a few days prior to the conveyance. The deed recites the consideration to be $3,500, not a cent of which was paid, but to be paid in Emery's assumption of an existing mortgage on the property of about $1,000, and the remainder in installments of $1,250 each, due and payable, respectively, in 6 and 12 months. The wife testifies that she was herself the active agent in the sale, though Emery upon this point differs from her, and that the consideration was $2,700, evidenced by one note payable in six months. It is an astounding circumstance that the owner of this property should be willing to make a *bona fide* conveyance of it, without any personal security from the grantee, whose tax-list shows him to be worth less than $2,000, and besides omitted any reservation of lien, but expressly acknowledged in the deed that the entire purchase money had been paid, when not one dollar had changed hands. As between the parties, had the transaction been *bona fide*, the equitable lien would have held notwithstanding the acknowledgment; but if the property had been sold by Emery the next day to an innocent purchaser the lien would have ceased to exist. Such looseness in business transactions is susceptible of but one explanation. Beside this, Emery never took possession of the property, but promptly, on the following day, conveyed it to Hannah Graham on the consideration, as she and he allege, of a cancellation of his note and $100 profit. The explanation of this sudden change of mind is shallow. Her grief on realizing that she would have to vacate the property within 30 days so overwhelmed her, and so affected Mr. Emery, that she was willing to give, and he to receive, $100, and cancel the trade. In addition to these circumstances, the negligence of Emery in examination of the title; the fact that the deed he received and the deed which he executed were acknowledged on the same day, and within two hours of each other; the fact that he was wholly uninformed and uncertain as to the amount of unpaid interest there was upon the mortgage which he assumed; the fact that he subsequently remarked to an attorney, in discussing with him how a married man could place the title to property in his wife, "like I did in that Graham case,"—all point with reasonable certainty to the conclusion that, if Emery was paid $100 at all, it was for his services in acting as a conduit of the fraudulent designs of Jeremiah and Hannah Graham.

Their counsel in his brief has laid much stress on the fact that the record does not disclose the exact time when appellants became the holders of the Graham paper, and urges that, since it does not affirmatively appear that they were the holders on the 24th day of October, they cannot be regarded as existing creditors at the time of the conveyance to Emery. It is sufficient answer to this to say that the negotiable paper made by Graham was executed in the year 1877. It was on this paper that the appellants obtained the judgment under which Graham's property was sold. The proposition advanced by counsel, that a stranger or volunteer cannot, by paying a debt for which another is bound, be subrogated to the creditor's rights, though sound as an abstract principle, has no application to this case. There is nothing in the record to show that the plaintiffs occupy the attitude of volunteers in paying a debt. As is shown by the testimony of Arnold, and as it appears by the uncontroverted allegations of the bill, they took their paper by purchase and assignment. When they did so, they acquired by contract, not by subrogation, all of the rights of the original payees, as against the maker of this paper. Subrogation arises by operation of law; as, where a surety pays the debt of his principal, he is substituted by law, not by his contract, to all the rights and securities of the creditor.

Wherefore the judgment of the district court is reversed, and the cause is remanded, with directions to set aside the decree of July 27, 1887, and to enter a judgment declaring void the Graham and Emery deeds, and by appropriate order to compel the surrender of the property to the plaintiffs.

NOTE.

### RESULTING TRUSTS—IN GENERAL.

When a conveyance is made to one person, the consideration for which moves from another, a trust results in favor of the latter. Bigley v. Jones, (Pa. Sup.) 7 Atl. Rep. 54; Donlin v. Bradley, (Ill. Sup.) 10 N. E. Rep. 11; Harris v. Mc-

Intyre, (Ill. Sup.) 8 N. E. Rep. 182; Springer v. Young, (Or.) 12 Pac. Rep. 400; Smith v. Brown, (Tex.) 1 S. W. Rep. 573; Bedford v. Graves, (Ky.) Id. 534; Ward v. Matthews, (Cal.) 14 Pac. Rep. 604; O'Connor v. Irvine, (Cal.) 16 Pac. Rep. 236; Carter v. Challin, (Ala.) 3 South. Rep. 313; Reynolds v. Sumner, (Ill. Sup.) 14 N. E. Rep. 631; Craig v. Turley's Adm'r, (Ky.) 6 S. W. Rep. 648. And such trust results, even though the consideration has been in fact advanced by the grantee for the other person; the grantee holding the title as security for such advances. Barroilhet v. Anspacher, (Cal.) 8 Pac. Rep. 804; Walton v. Karnes, (Cal.) 7 Pac. Rep. 676. But see, to the contrary, In re Wood, 5 Fed. Rep. 443; Bear v. Koenigstein, (Neb.) 20 N. W. Rep. 104. An oral agreement to purchase for another at a *bona fide* sheriff's sale will not of itself raise a trust. Fraud at the time of the sale, or the payment of the purchase money, is necessary. Appeal of McCall, (Pa. Sup ) 11 Atl. Rep. 206. After the legal title has been conveyed to one who agreed to buy for another, the application of the latter's money to pay notes for the purchase money creates no resulting trust in favor of the other. The trust must attach, if ever, at the time of the original conveyance. Beecher v. Wilson, (Va.) 6 S. E. Rep. 209.

Where a party, while acting as agent for another, collecting rents, paying bills, etc., buys land at the request of his principal, but takes the legal title in his own name, advancing the money himelf, which the principal afterwards repays him, a trust results in favor of such principal and his representatives, under Civil Code Cal. § 853, providing that "when a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made;" it being sufficient if the money paid by the party taking the legal title was advanced as a loan. Hellman v. Messmer, (Cal.) 16 Pac. Rep. 766.

Where the brothers of a merchant take a lease in course of their management of his business, which he had intrusted to them, and pay the first month's rent under it from his funds, treating the lease as his property during his life, but refusing, after his death, to assign the lease to his executors, equity will establish a resulting trust in the lease in favor of the decedent's estate. Plant v. Plant, (N. J. Ch.) 13 Atl. Rep. 849.

Where one secures title in violation of some duty owing to another, he becomes a trustee for such other. Lakin v. Sierra Buttes Gold Min. Co., 25 Fed. Rep. 337; Rose v. Hayden, (Kan.) 10 Pac. Rep. 554. See, also, King v. Remington, (Minn.) 29 N. W. Rep. 352, and note, 365.

After the legal title has been conveyed to one who agreed to buy for another, the application of the latter's money to pay notes for the purchase money creates no resulting trust in favor of the other. The trust must attach, if ever, at the time of the original conveyance. Beecher v. Wilson, (Va.) 6 S. E. Rep. 209.

The owner of land, without valuable consideration, deeded it to a city in trust for a public levee, and afterwards, for value, gave a second deed, which recited the first, and stated that he had certain ferry rights in the premises, and that it was desirable that the city should hold it free from such claim. In an action brought by the grantor's heirs to recover the land because the city no longer used it for the purposes for which it was conveyed, held, that grantor conveyed all his interest in the premises, and that there was no resulting trust. Coffin v. City of Portland, (Or.) 17 Pac. Rep. 580.

One who procures an assignee in insolvency, the creditors, and the debtor to allow him to purchase the debtor's property at public sale for a nominal sum, by advising them as their attorney that thereby a sacrifice will be prevented, and by orally promising to hold and manage it till it can be sold more advantageously, comes within the exceptions to the statute of frauds on account of confidential relations and part performance, and also within Civil Code Cal. § 853, providing that a trust is presumed to result on a transfer of property to one person when the consideration is paid by another, and sections 2222 and 2224, providing also for such trust where the property is gained by fraud. Broder v. Conklin, (Cal.) 19 Pac. Rep. 513.

Where one occupying a fiduciary position converts his principal's funds, and applies them to improving lands to which he holds the legal title, the entire property will be charged with a trust. Atkinson v. Ward, (Ark.) 2 S. W. Rep. 77.

A resulting trust must arise at the time the title is taken. No subsequent oral agreement or payment will create it. Smith v. Turley, (W. Va.) 9 S. E. Rep. 46.

A mortgagee purchased the land at the foreclosure sale, but gave the name of one M. as purchaser, and had the deed executed to M., and recorded, all of which was done without M.'s knowledge and consent; and when M. was informed of it he refused to have anything to do with the transaction. Held that, as the grantee refused to sanction the conveyance, 1 Rev. St. N. Y. p. 728, § 51, which declares that no trust shall result to the person paying the money on a purchase of real estate, but the title shall rest in the alienee named in the conveyance, had no application. Robertson v. Sayre, (Sup.) 6 N. Y. Supp. 649.

A conveyance of land to a relative, without consideration, upon an oral agreement to reconvey on demand, creates a trust enforceable in equity, though the object of the conveyance was to prevent the property from being seized to satisfy a fine against the grantor for which the land could not have been legally taken. Cordova v. Lee, (Tex.) 14 S. W. Rep. 208.

A woman put her own earnings and those of her minor son into a fund with which she purchased a house and lot for a home for them. The deed was taken in the name of the son, without her knowledge or consent. She was an ignorant woman, unacquainted with legal forms. She lived in the house, and her son lived with her. Held, that the evidence showed a resulting trust in her for a half interest in the land, since her intention that the son should share the home with her constituted a waiver of her right to the en-

Culver v. Graham.

tire title. Watson v. Murray, (Ark.) 16 S. W. Rep. 293.

The owner of a note, who had brought suit on it against the maker, assigned the note, together with all the avails of the suit, to a trustee for the purpose of securing certain persons who had become sureties for him upon a bond, "first deducting and paying out of any money that may be realized all charges for costs and attorney's fees." Held, that such assignment created a trust in favor of the assignor's attorney for his fees and disbursements for costs in the suit on the note. Tyler v. Mayre, (Cal.) 27 Pac. Rep. 160.

Where one as trustee for the stockholders of a corporation purchases land for their benefit, and with their consent conveys the same as such trustee absolutely to another, with the understanding that it was to be for their use and benefit, a resulting trust is created, and, if such trustee disposes of any part of the land and converts the proceeds to his own use, he may be removed from such trust at the instance of any stockholder. Fisk v. Patton, (Utah,) 27 Pac. Rep. 1.

Where a deed is made to one as assignee in consideration of an assignment to be made for the benefit of creditors, and the assignment is not made, the grantee holds the legal title in trust for the grantor or his heirs. McDermith v. Voorhees, (Colo. Sup.) 27 Pac. Rep. 250.

A trust to purchase lands at tax sale and restore them to their owner is not established by an agreement, just before the time of redemption expired, to extend the period of redemption a month beyond the statutory limit. Hancock v. Hubbell, (Cal.) 12 Pac. Rep. 618.

If heirs acquiesce in a conveyance of real estate made by one of their number by way of exchange for other real estate, the latter will hold the real estate received in exchange in trust for them. Broomall v. McCallion, (Pa. Sup.) 8 Atl. Rep. 413.

### PAYMENT OF PURCHASE MONEY.

A resulting trust will not arise from an advance of money to the purchaser after the purchase is complete. The money must be paid at the time. Appeal of Walter, (Pa. Sup.) 8 Atl. Rep. 406.

In Wisconsin, where money or other securities of one person are used by another to purchase property in his own name, an implied trust arises in favor of the party with whose means the purchase is made. McClung v. Steen, 32 Fed. Rep. 373.

A defendant, in June, 1881, agreed with a railroad company to purchase the land in question, the first payment of $225.28 to be made July 8, 1881, when a written contract should be made allowing defendant five years from that date for the payment of the balance. On July 5, 1881, plaintiff paid to the company the $225.28 for the use of defendant. It was verbally agreed that the contract should be taken in the name of plaintiff, as security for the advance, and that the $225.28, with interest, should be repaid to plaintiff in one year. Plaintiff, within the year, extended the time of payment six months. Before the six months expired, plaintiff paid the balance, $703, to the company, and took a deed to himself of the land. This payment was voluntary, and unknown to defendant. Plaintiff never demanded payment of any of the money advanced. Defendant had been ready to pay the amount due, but plaintiff had refused to make any statement or accept payment. Defendant, with the approval of plaintiff, had occupied and improved the land since May, 1880. Plaintiff did not purchase from defendant his rights under the contract with the company. Held, that a resulting trust was shown in favor of the defendant which the court would enforce. Ward v. Matthews, (Cal.) 14 Pac. Rep. 604.

A mother gave to her son an absolute deed to a piece of land, the son making a parol promise to pay two notes which she had given to her vendor for the amount of the purchase money. These notes, however, were subsequently paid by the mother. Held, that there was no resulting trust in the land in her favor. Boozer v. Teague, (S. C.) 3 S. E. Rep. 551.

Where it appeared that defendant had purchased certain lands with money furnished by plaintiff's intestate for that purpose, and had held the lands as the trustee of the latter, during his life, it was error to dismiss a bill to declare a resulting trust in plaintiff's favor. Reynolds v. Sumner, (Ill. Sup.) 14 N. E. Rep. 661.

In a suit by a husband against his wife to enforce an alleged resulting trust based on payment of part of the price, evidence that part of the price was paid by one not a party to the suit is admissible to rebut complainant's allegation that he paid it. Kelly v. Kelly, (Ill. Sup.) 18 N. E. Rep. 785.

Where land is purchased by one, and at his request the deed is made to another, under 3 Rev. St. N. Y. (7th Ed.) p. 2181, § 51, providing that in such cases the title shall vest in the grantee, though the purchaser receives the deed without disclosing the existence thereof to the grantee, and takes and retains possession of the land, yet by the deed the title becomes vested in the grantee, and no trust results in favor of the purchaser. Following Everett v. Everett, 48 N. Y. 218. Hoar v. Hoar, 1 N. Y. Supp. 379.

Where a bond is assigned at the instance of a third person, who pays the consideration, the assignee holds in trust for him. Grant v. Heverin, 18 Pac. Rep. 647, overruled. Grant v. Heverin, (Cal.) 19 Pac. Rep. 493.

A trust results in favor of one who purchases and pays the consideration for land conveyed to another. Burns v. Ross, (Tex.) 9 S. W. Rep. 468.

Plaintiff purchased land for which he was to pay $950, $200 in cash, the balance to be secured by mortgage on the land; and, to enable him to make the cash payment, procured a loan of $200 from defendant. As security therefor, title to the land was taken in defendant, he executing the mortgage back, and orally agreeing to convey to plaintiff on payment of the $200, and being secured on account of his liability on the mortgage. Held, that defendant held the entire property in trust for plaintiff. Thomas v. Jameson, (Cal.) 19 Pac. Rep. 177.

Where defendant uses plaintiff's money to pur-

## Culver v. Graham.

chase land, taking title in his own name, with the understanding that he will afterwards convey to plaintiff, which he refuses to do on plaintiff's subsequent request, and the parties stand in confidential relations to each other at the time of purchase, a trust results in plaintiff's favor. Cooper v. Lee, (Tex.) 12 S. W. Rep. 483.

Where the price of land is paid by one, and the deed made to another, a resulting trust is not established in favor of the latter, unless the payment is made at the time of the purchase. Fessenden v. Taft, (N. H.) 17 Atl. Rep. 713.

S. and P. were partners, and the latter took an assignment from I. of a certificate of purchase of land, which I. had received from the state. I. paid one installment, and executed his three promissory notes in payment of the other installments, which, by an understanding with P., had with him at the time of the assignment, I. was to pay off, but he neglected the payment of two of them, and S. subsequently, and long after the death of P., paid them, with the accrued interest thereon, and had the deed to the land executed by the state to P. Held, that the fact of such payment by S. did not give a resulting trust in his favor. Sisemore v. Pelton, (Or.) 21 Pac. Rep. 667.

A resulting trust will not be declared in favor of one who paid no part of the purchase money, and whose claim of joint purchase on money advanced by defendant as an alleged loan to him rests upon his own testimony, which is denied by defendant, and the statements of a witness as to an admission alleged to have been made three years before by the defendant. Towle v. Wadsworth, (Ill. Sup.) 30 N. E. Rep. 602.

One who furnishes money with which another person pays a note which he had given in part payment for land previously bought by him, does not thereby acquire a resulting trust in the land. Reed v. Reed, (Ill. Sup.) 25 N. E. Rep. 1095.

To raise a resulting trust in land from the payment of the purchase money, the payment or advance must be made before or at the time of the purchase. Bright v. Knight, (W. Va.) 13 S. E. Rep. 63.

Land was conveyed to plaintiff's brother, who made the bargain and determined the form of conveyance therefor, but their father was to pay, and did in fact pay, for the same, and kept possession, and took the rents and profits thereof, during life. Held, that this created a resulting trust in favor of their father, and plaintiff was entitled to a share of such land as a part of his father's estate. Dana v. Dana, (Mass.) 28 N. E. Rep. 905.

### HUSBAND AND WIFE.

When a wife allows her husband to act as her agent in the care and investment of her money, no presumption of a gift arises. On the contrary, if he invests it in real estate, and takes the title in his own name, a resulting trust arises in her favor. Heath v. Slocum, (Pa. Sup.) 9 Atl. Rep. 259.

Where a husband and wife sold a donation land claim acquired by them under the act of congress of September 27, 1850, and invested the proceeds in other lands, with the understanding and agreement that the husband would convey to the wife an undivided half of the latter premises at some convenient time thereafter, the deed having been made to the husband alone, an implied trust results to the wife in the land so purchased, which she has the right to enforce in equity. Springer v. Young, (Or.) 12 Pac. Rep. 400.

Where land is about to be sold under partition proceedings, and one of the heirs entitled agrees with her husband that, in case he purchases it, to allow her interest to remain in the land, and, in pursuance of this agreement, the husband buys the property, and the wife gives a receipt for her share as heir of the purchase money, without receiving the same, a trust results in favor of her to the extent of her interest in the land. Bigley v. Jones, (Pa. Sup.) 7 Atl. Rep. 54.

A wife furnished one-half of the purchase price of a homestead, by an agreement with her husband that the deed was to be made to her, but at the time the conveyance was made she knew it was made directly to her husband, and raised no objection. Held, that in the absence of fraud, under Rev. St. Wis. § 2071, abolishing uses and trusts, no trust resulted in favor of the wife, notwithstanding, at the time, she thought her husband took the deed in trust for her. Skinner v. James, (Wis.) 35 N. W. Rep. 37.

A husband bought land, paying for it in part with his wife's money. This land he sold, and bought other land, his wife joining with him in the sale. Held, that there was no resulting trust giving the wife a claim on the land last purchased. Jennings v. Longdon, (Pa. Sup.) 11 Atl. Rep. 212.

For a wife to establish a resulting trust in land in her husband's name, as against his creditors, on the ground that he bought it by her direction, and paid for it with her money, the proof must be clear and convincing. Hay v. Martin, (Pa. Sup.) 14 Atl. Rep. 333.

In a suit by a husband against his wife to enforce an alleged resulting trust based on payment of part of the price, evidence that part of the price was paid by one not a party to the suit is admissible to rebut complainant's allegation that he paid it. Kelly v. Kelly, (Ill. Sup.) 18 N. E. Rep. 785.

In a suit by a husband against his wife to enforce an alleged resulting trust, based on payment of part of the price, where the evidence shows that complainant only contributed one twentieth of the price, and nothing towards the improvements placed on the land by defendant, it is proper to allow him only that proportion of the value of the land, without regard to the improvements. Kelly v. Kelly, (Ill. Sup.) 18 N. E. Rep. 785.

Where a wife pays part of the price of land out of money given her by her father to purchase herself a home, and the husband takes a bond for title in his own name, a trust arises in the wife's favor to the amount of the payment, and the husband's mortgagees, who are cognizant of the facts on taking the mortgage, take subject to the wife's equity. Kline v. Ragland, (1886,) 47 Ark. 111.

## Culver v. Graham.

Long lapse of time will defeat the enforcement of a resulting trust, where a husband acquires land with his wife's separate estate, and takes the title, without her knowledge or consent, in his name. Smith v. Turley, (W. Va.) 9 S. E. Rep. 46.

No resulting trust can arise out of an agreement between husband and wife, by which the husband takes the title to land in his own name, and pays part of the purchase price with his own money, and agrees to hold for the wife's benefit, and she afterwards pays the balance of the price. Zeller v. Light, (Pa. Sup.) 17 Atl. Rep. 433.

Where a conveyance of land is made to a wife at the husband's instance, the presumption of a resulting trust in his favor is rebutted, though he furnished the purchase money. Gilliland v. Gilliland, (Mo.) 10 S. W. Rep. 139.

A husband and wife settled on government land under the homestead laws, the entry being made in the husband's name, but the wife furnished all the money for expenses and improvements. Final proof was made in the husband's name, under an agreement that he should convey to her when the patent was issued. After final proof had been made, the husband died, without having conveyed. Held, that the wife was entitled to the land as against the husband's heirs. Barlow v. Barlow, (Kan.) 28 Pac. Rep. 607.

Where a husband pays the purchase money of land, and has the land conveyed to his wife, the presumption is that the husband intended to make a gift to his wife, and not to create a resulting trust, and this presumption must prevail, unless it is rebutted by convincing evidence. Whitley v. Ogle, (N. J. Ch.) 20 Atl. Rep. 284.

Where a husband receives his wife's money, and agrees to waive his marital rights, and to invest it for her in certain land, which he afterwards buys with the money, taking title in his own name, a trust results in favor of the wife as against the collateral heirs of the husband. Beam v. Bridges, (N. C.) 13 S. E. Rep. 112.

A deed from a father-in-law, made in consideration of $500, "less $200 for the love and affection the said W. [grantor] bears to his daughter, [the grantee's wife,] donated out of the $500 at and before the sealing and delivery of these presents," and conveying the premises to the son-in-law, with warranty title, vests the title in him for his own use, and no trust results in favor of the daughter. Hawks v. Sailors, (Ga.) 13 S. E. Rep. 638.

Prior to the adoption of Code Miss. 1857, on the purchase of lands by the husband in his own name with funds of the wife, a resulting trust arose in her favor to the same extent, and under the same circumstances, that it would have arisen in favor of any other person furnishing the purchase money. Greaves v. Atkinson, (Miss.) 10 South. Rep. 73.

Where a wife, upon the partition of her father's estate, agrees to take a certain tract as her share, and has the title conveyed to her husband under an agreement with him that he is to hold it for her benefit, and she and her husband enter into a recognizance at the time of the partition to pay the other heirs their shares of the value of the

tract, and a year afterwards these owelty payments are made out of the wife's inheritance, a resulting trust in the land in favor of the wife will be declared as against a judgment creditor of the husband, who had actual notice of the partition, and the fact that the husband took the title for the benefit of his wife. Light v. Zeller, (Pa. Sup.) 22 Atl. Rep. 1025, 1029.

Where a husband, on departing for a long absence, desiring to provide for his wife in case of death, conveys his realty to her, with an agreed understanding that in case he ever returned alive she should reconvey, her beneficial interest was contingent on his death. Brison v. Brison, (Cal.) 27 Pac. Rep. 186.

### CONFIDENTIAL RELATIONS.

An executor who, at the foreclosure sale under mortgage given by one of the devisees of her interest in the testator's estate, purchases the same for himself, there being no trace of fraud in the matter, does not hold the property in trust for her. Allen v. Gillette, 8 Sup. Ct. Rep. 1331.

A guardian of an infant having purchased land chiefly with the money of his ward, and taken title in his own name, a trust results in favor of the infant, who may claim a proportionate share of the land. Bitzer v. Bobo, (Minn.) 38 N. W. Rep. 609.

The owner of a mining claim sold for taxes requested another to buy it in, and furnished money therefor. The agent purchased in his own name. Held, that these transactions created a resulting trust in the owner's favor. O'Connor v. Irvine, (Cal.) 16 Pac. Rep. 236.

An agent who buys land at the request of his principal, taking title in his own name, and advancing the money, which is afterwards repaid, holds in trust for his principal. Hellman v. Messmer, (Cal.) 16 Pac. Rep. 766.

Plaintiff conveyed certain property to her son with the understanding that he should pay her debts, and reconvey the residue to her. The property was sold under mortgage foreclosure, but a compromise was effected, by which the purchaser agreed to accept other property in lieu, and the son procured the property sold to be conveyed to him by the purchaser. Held, that under the provision of Civil Code Cal. § 852, subsec. 3, that resulting trusts may arise by operation of law, parol evidence was admissible to show the nature of the dealings between the plaintiff and her son, and to establish a trust in her favor. Mallagh v. Mallagh, (Cal.) 16 Pac. Rep. 535.

A land agent, employed by his principal to negotiate for the purchase of certain land, purchased the property for himself and his partner with his own money, and took title in the name of his partner. Held, that the purchase money furnished by the agent was a loan only, and the agent and his partner may hold the title as security for the money advanced, but cannot hold adversely to the principal. Bryan v. McNaughton, (Kan.) 16 Pac. Rep. 57.

An oral agreement to purchase for another at a bona fide sheriff's sale will not of itself raise a trust. Fraud at the time of the sale or the

payment of the purchase money is necessary. Appeal of McCall, (Pa. Sup.) 11 Atl. Rep. 206.

Plaintiff was the owner of certain real estate purchased of a corporation of which defendant was an officer and director. The corporation derived its title from certain heirs, who brought suit to compel payment of purchase money or a sale of the land. Payment not being made, a sale was ordered. Defendant had assured plaintiff, when the action was begun, that the company would protect the rights of its grantees, and make their title good. At the sale, defendant became the purchaser of the land, and then refused to confirm plaintiff's title. Held, that defendant voluntarily assumed a confidential relation in the nature of a trustee to plaintiff. Allen v. Jackson, (Ill. Sup.) 13 N. E. Rep. 840.

A parol agreement by a purchaser of real estate at a sheriff's sale to hold the same, and to convey it to the defendant in the execution, whenever he shall repay to the purchaser his advances, does not raise a resulting trust enforceable within the proviso of the Pennsylvania act of April 22, 1856, § 4, (P. L. 533,) unless fraud is shown. Kraft v. Smith, (Pa. Sup.) 11 Atl. Rep. 370.

If an agent employed to purchase lands for his principal, and with his money, upon the purchase thereof takes the title thereto in his own name, without the knowledge or consent of the latter, he holds as trustee. Kraemer v. Deustermann, (Minn.) 35 N. W. Rep. 276.

Plaintiff, who was largely indebted, and feared that his creditors would seize his property, conveyed all his land to H., to hold until plaintiff should have paid his debts, and then reconvey to him. After the debts were paid, the land was conveyed to plaintiff's wife, at his request. Plaintiff and his wife then joined in conveying this land in exchange for another tract, title to which was also taken in the wife's name. Held that, as to the first land, the transaction was only a conveyance by plaintiff to his wife through H., and no trust results in plaintiff's favor in that or the land for which it was exchanged. Taylor v. Miles, (Or.) 25 Pac. Rep. 143.

Plaintiff and her two daughters, E. and H., bought a home, plaintiff paying the purchase money, except small contributions from the daughters' earnings. The title was taken in the name of E., who against her will, as she testified, conveyed one-half to H., and the other half to plaintiff. Plaintiff and E. testified that the purchase was by and for plaintiff only; that E. negotiated for the purchase and took the title in her name because plaintiff could not speak nor write English; and that she, with her family, occupied the property as a residence for eight years, during which she paid the taxes and insurance. H. testified that she and E. bought the property, and was somewhat corroborated, and she introduced a lease to plaintiff, but both E. and plaintiff denied that they knew of or authorized it. Held, that a decree that H. held the title to half the property under a resulting trust for plaintiff was proper. Lundy v. Hanson, (Colo. Sup.) 26 Pac. Rep. 816.

A debtor called a meeting of his creditors, who agreed that his property should be taken to secure all equally. The defendants were appointed a committee to carry out the agreement. They took possession of the property, and caused mortgages to be made by the debtor, first to themselves, and then to each of the other creditors. The mortgages were given priority in the order of their execution. The defendants having sold the property, and applied the proceeds in payment of their own debts, held, that they were bound to divide *pro rata* with the other creditors. Range Co. v. Meyer, (Neb.) 48 N. W. Rep. 395.

## MINING PROPERTY.

To establish a resulting trust in mining claims and interests acquired by an alleged agent of the claimant in his own name, the claimant must make definite proof that the interest was acquired by his money paid at the time, and traceable directly into the property, and general evidence of support, and of agreements and payments made before and after the acquisition of title, is inadmissible, unless they are connected with the acquisition and its prerequisite payments, or the transaction itself establishes a resulting trust. Bank v. Campbell, (Colo. App.) 30 Pac. Rep. 357.

Plaintiff and defendant entered into a contract whereby defendant was to buy certain mining property, and plaintiff was to perfect the title by foreclosing a certain trust-deed on the property, and buy it at foreclosure sale, and was also to obtain patents, the proceeds of the property to be used first to reimburse defendant, and then plaintiff, and the residue to be divided between them. Held that, upon purchase by defendant, plaintiff became vested with a beneficial interest in the property; the performance of the contract by him not being a condition precedent to his acquiring such interest. Bates v. Wilson, (Colo. Sup.) 24 Pac. Rep. 99.

Plaintiff and others, by absolute deed, conveyed mining property to persons, to whom plaintiff and one of the grantors, who had no interest in the property, were indebted, and about two months thereafter the creditors, in pursuance of a parol agreement made at the time of the conveyance, executed an agreement to reconvey one third of the property to plaintiff when they had realized sufficient to cancel the debt due them. Held, that the conveyance constituted a valuable consideration which supported the agreement, and, on the happening of the contingency, a trust resulted in favor of plaintiff. Adams v. Lambard, (Cal.) 22 Pac. Rep. 180.

After a patent to a mining claim has issued to persons claiming under the original locators, the grantee, in a previous conveyance of a portion of the claim, can maintain an action against the patentees to enforce a trust as to the title to such portion, under Civil Code Dak. § 1297, providing that "one who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is * * * an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it." Suessenbach v. Bank, (Dak.) 41 N. W. Rep. 662.

Culver v. Graham.

## LAND CONTRACT.

A vendee under a land contract, who had obtained it as agent for a land company, assigned it to the company's manager, and contracted to convey the land to the company. The vendee paid one installment of the purchase price, and the company's manager paid the second,—both with the company's funds. Held, that these facts did not raise an implied trust in the land in favor of the company, as against the vendor, who had dealt with the vendee and the manager in their individual capacities only, without knowledge either of their relation to the company or of the fact that the money paid on the contract belonged to the company, and who had, in good faith and for value, obtained from them a release of all their rights to the land after a default in the payment of the third installment. Stratton v. Timber Co., (Cal.) 24 Pac. Rep. 1065.

Where persons having notice of a contract to convey land to plaintiff procure a conveyance of the land to themselves, they take it subject to a trust in his favor, and he may compel them to convey him the legal title. Ross v. Parks, (Ala.) 8 South. Rep. 368.

## PAYMENT OF LIEN.

Where a mortgagor is in possession of lands under an agreement with the purchaser at the foreclosure that he shall have time to pay the debt, and upon payment shall receive a reconveyance, upon his death there is a resulting trust for the benefit of his heirs. Gaines v. Saunders, (Ark.) 7 S. W. Rep. 301.

To establish a trust resulting from an agreement between the mortgagee and mortgagor at a foreclosure sale that the mortgagee was to purchase, and reconvey to the mortgagor when the debt was paid, it is sufficient to show that the mortgagor, with the full knowledge and consent of the mortgagee, treated the property after the sale as his own, and that the mortgagee himself treated it as the mortgagor's, and had indorsed the master's deed, and delivered it to the mortgagor. Sullivan v. Sullivan, (Tenn.) 6 S. W. Rep. 876.

Where one holding a judgment lien on certain land orally agreed with the owner to sell it under his judgment, and bid it in for her, she to have a certain time to redeem, no trust results under the agreement when no part of the redemption money is paid. Salsbury v. Black, (Pa. Sup.) 13 Atl. Rep. 67.

## STATUTE OF FRAUDS.

Trusts in land created by parol promises to convey are void. Dunphy v. Ryan, 6 Sup. Ct. Rep. 486; Id., (Mont.) 1 Pac. Rep. 710; Hansen v. Berthelson, (Neb.) 27 N. W. Rep. 423; Tatge v. Tatge, (Minn.) 25 N. W. Rep. 596, and note; Shafter v. Huntington, (Mich.) 19 N. W. Rep. 11; Allen v. Withrow, 3 Sup. Ct. Rep. 517; Jones v. Van Doren, 18 Fed. Rep. 619; Longdon v. Clouse, (Pa. Sup.) 1 Atl. Rep. 600; Dilts v. Stewart, (Pa. Sup.) 1 Atl. Rep. 587; Braden v. Workman, (Pa. Sup.) 1 Atl. Rep. 655; Fogel v. Shall, (Pa. Sup.) 4 Atl. Rep. 339; Donohoe v. Mining Co., (Cal.) 5 Pac. Rep. 495; Ingham v. Burnell,

(Kan.) 2 Pac. Rep. 804. But see Berry v. Sawyer, 19 Fed. Rep. 286; Laughlin v. Mitchell, 14 Fed. Rep. 382; Byrne v. Ward, (Mich.) 19 N. W. Rep. 750. But a parol trust, having been executed, is valid. Karr v. Washburn, (Wis.) 14 N. W. Rep. 189; Cresswell v. McCaig, (Neb.) 9 N. W. Rep. 52; Hays v. Regar, (Ind. Sup.) 1 N. E. Rep. 386.

A contract to form a partnership for the purpose of dealing in lands is not within the statute. Pennybacker v. Leary, (Iowa,) 21 N. W. Rep. 575; Richards v. Grinnell, (Iowa,) 18 N. W. Rep. 668. To the contrary, see Raub v. Smith, (Mich.) 28 N. W. Rep. 676. An agreement to divide the profits of a sale of land is not within the statute. Snyder v. Wolford, (Minn.) 22 N. W. Rep. 254.

A parol agreement that another shall be interested in the purchase of land, or a parol declaration by a purchaser that he buys for another, without an advance of money by the latter, falls within the statute of frauds, and cannot create a resulting trust. Bland v. Talley, (Ark.) 6 S. W. Rep. 234.

In an action to enforce a trust in land, where it appears on the face of the complaint that the alleged trust rests on a parol agreement to reconvey, the defense of the statute of frauds may be raised by demurrer. Barr v. O'Donnell, (Cal.) 18 Pac. Rep. 429.

Where a trust is raised by construction, and not express, the statute of frauds has no application. Gruhn v. Richardson, (Ill. Sup.) 21 N. E. 18.

Under the statute of frauds, a mere oral promise to reduce to writing a verbal agreement declaring a trust in land, and the breach thereof, are not admissible to establish such trust, except in connection with other evidence tending to show fraudulent conduct in the acquisition of the title by the party holding it. Von Trotha v. Bamberger, (Colo. Sup.) 24 Pac. Rep. 883.

## PAROL EVIDENCE.

A resulting trust may be proved by oral testimony, but such testimony must be clear, explicit, and unequivocal. Appeal of Jackson, (Pa. Sup.) 8 Atl. Rep. 870; Crow v. Watkins, (Ark.) 2 S. W. Rep. 659; Philpot v. Penn, (Mo.) 3 S. W. Rep. 386; Lofton v. Sterrett, (Fla.) 2 South. Rep. 837; Walton v. Karnes, (Cal.) 7 Pac. Rep. 676; Mallagh v. Mallagh, (Cal.) 16 Pac. Rep. 535; Sullivan v. Sullivan, (Tenn.) 6 S. W. Rep. 876; P'Pool v. Thomas, (Ky.) 8 S. W. Rep. 198.

Parol evidence is admissible to establish a resulting trust, but not to contradict a valid written contract. Beck v. Beck, (N. J. Ch.) 10 Atl. Rep. 155.

In case of a conveyance to A., in trust for B., his heirs and assigns, A. will not be allowed to introduce parol evidence to show a part payment by him of the purchase price of the property, upon the agreement that he was to have the property after B.'s death, for the purpose of establishing an implied or resulting trust in his favor. Moore v. Stinson, (Mass.) 12 N. E. Rep. 410.

Though when no consideration for a conveyance is either recited therein or proved, a trust will result in favor of the grantor, parol evidence

## Culver v. Graham.

will not be admitted as between the parties to contradict the recital in a deed of such a consideration for the purpose of raising such a trust. Feeney v. Howard, (Cal.) 21 Pac. Rep. 984.

Plaintiff and others, by absolute deed, conveyed mining property to persons to whom plaintiff and one of the grantors, who had no interest in the property, were indebted, and about two months thereafter the creditors executed an agreement to reconvey one third of the property to plaintiff when the creditors had realized sufficient to cancel the indebtedness due them. Held, that parol evidence was admissible to show the consideration for both the deed and the agreement, and to show that the latter was executed in pursuance of an agreement made at the time of the conveyance. Adams v. Lambard, (Cal.) 22 Pac. Rep. 180.

Parol evidence is admissible to prove facts from which a trust by implication of law may arise. Von Trotha v. Bamberger, (Colo. Sup.) 24 Pac. Rep. 883.

A father who conveys land to his infant daughter, her heirs and assigns, forever, by deed reciting that the same is to be held in trust by her grandfather until she becomes of age, cannot prove by parol that he intended a resulting trust to himself in case of his daughter dying before attaining her majority. Annis v. Wilson, (Colo Sup.) 25 Pac. Rep. 304.

### FRAUD.

After A. and B. had filed upon separate adjoining tracts of land, A., without the knowledge of B., had his entry amended so as to cover both tracts, notwithstanding B. was and had been rightfully in possession of the tract entered by him, and by such means A. fraudulently obtained a patent for B.'s tract. Held, that A. would be considered a trustee of the legal title for B. as to such tract, and that an action of ejectment to recover such tract, brought by A. against B., would be enjoined. Sanford v. Sanford, (Or.) 13 Pac. Rep. 602.

The mere refusal to fulfill an agreement to purchase land for another is nothing more than the violation of a parol agreement, and equity will not decree the purchaser to be a trustee. But where one, by an agreement with the owner, is enabled to purchase the property of the latter for a nominal sum, he will not be permitted to repudiate the agreement, but will be held to be a trustee *ex maleficio* for the former owner. Shallcross v. Mawhinny, (Pa. Sup.) 7 Atl. Rep. 734.

A purchaser of land, with notice of facts entitling another to the delivery to him of a deed previously made out in his favor, and placed in escrow, will hold the legal title in trust for the latter. If he obtains possession by force from such *cestui que trust*, he must account to him for the value of the use and occupation, and the *cestui que trust*, on the other hand, must pay the purchase price into court for the benefit of such trustee, adding interest from the date of the tender of the price, unless he chooses to regard the interest as liquidating the value of the use. Cannon v. Handley, (Cal.) 13 Pac. Rep. 315.

When the legal title to land has been acquired in pursuance of a verbal agreement to hold the same in trust for a specified purpose, where it clearly appears that the title has been fraudulently acquired, and is still held in fraud of the rights of another having a valuable interest in the premises, a trust is created by operation of law. Von Trotha v. Bamberger, (Colo. Sup.) 24 Pac. Rep. 883.

### TRUSTS—STATUTE OF LIMITATION.

As between a trustee of an express trust and his *cestui que trust*, neither lapse of time, nor any defense analogous to the statute of limitations, can affect the right of the beneficiary to redress, Preston v. Walsh, 10 Fed. Rep. 315; where there has been no denial or repudiation of the trust, Bostwick v. Dickson, (Wis.) 26 N. W. Rep. 549; Reihl v. Likowski, (Kan.) 6 Pac. Rep. 886; or adverse claim made by the trustee, Bacon v. Rives, 1 Sup. Ct. Rep. 3. But when the trustee denies the right of the beneficiary, and his relation to the latter in respect of the trust property becomes adverse, lapse of time from the period of disavowal may constitute a bar in equity to the granting of relief to the *cestui que trust.* Ward v. Harvey, (Ind. Sup.) 12 N. E. Rep. 399; Speidell v. Henrici, 15 Fed. Rep. 753. In the case of Etting v. Marx's Ex'r, 4 Fed. Rep. 673, the trustee had invested the funds of the trust estate in Confederate bonds, and the right of the beneficiaries to redress was held to be barred by their acquiescence in such illegal investment for a period of 12 years after they could have sued the trustee, and during which time equities in favor of third persons had arisen. The court, on reviewing the authorities, held it to be a "settled doctrine of equity jurisprudence that men may bar themselves of equitable rights by such acquiescence as, if those equities were enforced, would injuriously affect the rights of third parties," and that, in considering this acquiescence and its results, no reference will be had by a court of equity to the statute of limitations. The rule that the statute has no application in the case of a trust is only true of pure or direct trusts. It is not true of implied and constructive trusts, where there is concurrent equity and law jurisdiction. Newson v. Board Com'rs, (Ind. Sup.) 3 N. E. Rep. 163; Churchman v. City of Indianapolis, (Ind. Sup.) 11 N. E. Rep. 301. In the case of a constructive trust, the statute begins to run in favor of the one having the legal estate from the time when the equitable rights of the other party accrued. Taylor v. Holmes, 14 Fed. Rep. 499. Where there is concurrent jurisdiction in the courts of law and equity, the statute may be pleaded with the same effect in the one court as in the other. York's Appeal, (Pa. Sup.) 2 Atl. Rep. 65. But whether the trust be express or implied, the statute does not commence to run against a *cestui que trust* in possession until the date of his ouster therefrom. Lakin v. Mining Co., 25 Fed. Rep. 337.

Where it is expressly agreed that a contract is to be performed within one year, extensions from time to time, by parol, for periods less than one year, will not be affected by the statute of

frauds, Donovan v. Richmond, (Mich.) 28 N. W. Rep. 516; and, when the party employed has continued from year to year to perform the services, it will be presumed that both parties have assented to the renewal of the contract, Sines v. Superintendent of Poor, (Mich.) 25 N. W. Rep. 485. A verbal lease of land until such time as the lessor shall pay the lessee a certain sum of money is neither an agreement that by its terms is not to be performed within one year from the making thereof, nor an agreement for leasing for a longer period than one year within the meaning of the statute of frauds of California. Raynor v. Drew, (Cal.) 13 Pac. Rep. 866.

For further discussion of that provision of the statute of frauds relating to contracts not to be performed within one year, see Treat v. Hiles, (Wis.) 32 N. W. Rep. 517, and note.