HARRIS H. WILLIAMS

*v.*

C. N. JOHNSON *et al.*

*Filed at Ottawa November 17, 1884.*

1. WILL—*subsequently acquired estate—whether it will pass by will—a will construed in that regard.* In this State, property acquired by a testator subsequent to the making of his will, may pass thereby without a re-publication of the will. It is only a question of intention whether subsequently acquired real estate shall pass, or not.

2. A testatrix, by her will, requested her administrator to pay her grandson out of her means not more than $300, and if at the end of three years he had not made a good use of it, to let him have no more, and bequeathed to her niece $1000, after which she expressed a desire to have a sale made of her personal effects, and her debts first paid out of the proceeds and other personal effects. The will then provided: "I do not want my administrator to pay H. H. W. [the grandson] only six hundred dollars in all, if he does do well with it; and I want the balance of my means to go to the relief of the Affican Kansas Freed Men's Association, with the exception of what it may cost to procure a grave stone for," etc.: *Held*, that the real estate acquired by the testatrix after making her will did not pass under the general words, "the balance of my means," and that such real estate descended as intestate property to her heir at law.

APPEAL from the Circuit Court of Warren county; the Hon. S. P. SHOPE, Judge, presiding.

Messrs. STEWART & STEWART, Mr. R. J. GRIER, and Messrs. LANPHERE & BROWN, for the appellant:

A foreign corporation can not acquire real estate, either by purchase or devise, unless such corporation is legally transacting business in this State, and then only what is necessary for the transaction of its business, or purchased in the collection of its debts. *Carroll* v. *East St. Louis*, 67 Ill. 568; *Bank* v. *Earle*, 13 Pet. 589; *Starkweather* v. *Bible Society*, 72 Ill. 55.

The fact that such corporation is created in another State, and is a citizen of such State, gives no rights or powers not permitted by our laws. (*Ducat* v. *City of Chicago*, 84 Ill. 172;

*Starkweather* v. *Bible Society,* 72 id. 55; *Health Co.* v. *Rosenthal,* 55 id. 90; Story on Conflict of Laws, secs. 37, 38; *Paul* v. *Virginia,* 8 Wall. 168.)   Therefore, each State must settle this question for itself, by its legislation, and the construction thereof by the courts of such State.

But this bequest is not made to the "Kansas Freedmen's Relief Association," but to "the relief of the Affican Kansas Freed Men's Association," and there is no proof whatever that the two associations are identical, or that there is an association of the style named in the will.   The courts will not permit the terms of a will to be altered, even where there was a mistake, by substituting that which could be clearly proven to have been intended.   Of this there is no proof whatever, but the court is asked to presume that such was the intent.   *Kurtz* v. *Hibner,* 55 Ill. 514, and cases cited.

If there was a latent ambiguity, no evidence was introduced to explain it.   We say, then, that the corporation in question can not take title to the lands in question for the reasons above stated.

Messrs. KIRKPATRICK & ALEXANDER, for the appellees:

The word "means," in the will, is broad enough to include realty.   *Cate* v. *Cranor,* 30 Ind. 292.

The same words in a will when applied to individuals, may require a different construction when applied to a charity. Adams' Equity, 219; *Heuser* v. *Harris,* 42 Ill. 425; *McConnell* v. *Smith,* 23 id. 611; *Brownfield* v. *Wilson,* 78 id. 467.

All parts of a will should be considered together, and the intent of the testator should control.   *Pond* v. *Bergh,* 10 Paige, 140; *Welsch* v. *Belleville Savings Bank,* 94 Ill. 191; *Johnson* v. *Johnson,* 98 id. 564; *Sorsby* v. *Vance,* 36 Miss. 564; *Brearley* v. *Brearley,* 9 N. J. Eq. (1 Stockt.) 21.

"Property," "worldly goods," "rights," "worldly effects," have been held to carry real estate.   2 Redfield on Wills, 308, 315–317.

A devise of "all my interest in a suit in De Kalb county," carried land embraced in the suit. *Swift* v. *Lee*, 65 Ill. 337.

Any construction resulting in a partial intestacy should be avoided. *Cate* v. *Cranor*, 30 Ind. 292; 2 Redfield on Wills, 116.

Intention as to after-acquired estate: *Willis* v. *Watson*, 4 Scam. 64; *Peters* v. *Spillman*, 18 Ill. 370.

English decisions are not applicable: *Willis* v. *Watson*, 4 Scam. 64; 1 Redfield on Wills, 332.

For the rule as to changes in condition of property, see 1 Redfield on Wills, 334.

A will operates upon any estate coming fairly within its terms, in which the testator is seized of a disposable interest at the time of his death. 1 Redfield on Wills, 338, 340.

A will speaks from the death of the testator. *Updike* v. *Tompkins*, 100 Ill. 406.

The testatrix was in treaty for the property in controversy at the time the will was written, so must have intended to include it.

Can foreign charitable corporations take by devise? Foreign corporations are allowed the same privileges as domestic corporations. *United States Mortgage Co.* v. *Gross*, 93 Ill. 483; *Stevens* v. *Pratt*, 101 id. 206; *Insurance Co.* v. *Scammon*, 102 id. 46; *Bank* v. *Montgomery*, 2 Scam. 428; *Bank* v. *Godfrey*, 23 Ill. 579; *Taylor* v. *Keep*, 2 Bradw. 368; *Starkweather* v. *Bible Society*, 72 Ill. 57; *White* v. *Hammel*, 38 Conn. 342.

Messrs. Lanphere & Brown, for the appellant, in reply:

An equitable title can not prevail against a legal title in ejectment. *Wales* v. *Bogue*, 31 Ill. 464; *Fischer* v. *Eslaman*, 68 id. 78; *Chiles* v. *Davis*, 58 id. 411; *Escherick* v. *Traver*, 65 id. 379; *Valletts* v. *Bennett*, 69 id. 632; *Fleming* v. *Carter*, 70 id. 286.

A foreign corporation can not take and hold real estate in this State unless it has been expressly authorized to take

and hold real estate by the act creating it.  *Starkweather* v. *Bible Society*, 72 Ill. 50.

Foreign corporations can not hold real estate in trust in this State.  *United States Trust Co.* v. *Lee*, 73 Ill. 142.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by Harris H. Williams, to recover certain lots in the city of Monmouth. It was admitted on the trial that both parties claim through a common source,—that is, through Persia N. Williams, who derived title from Azro Patterson and wife, by deed dated May 3, 1881, duly executed on that day, and recorded in the recorder's office May 16, 1881.  It was also stipulated on the trial that Persia N. Williams died May 24, 1881, seized in fee of the property; that Harris H. Williams, the plaintiff, was her grandson and only surviving heir.  It was also stipulated that Persia N. Williams left a will, which read as follows:

"MONMOUTH, WARREN COUNTY, ILL., *March 12, 1881.*

"Feeling conscious of my declining health, and having no natural heir living nigher than a grandson, I would like to have what little I may have to spare to *him* in such a shape that he can not spend it immediately, I would therefore request my administrator not to pay him out of my means more than three hundred dollars, and if at the end of three years he finds that he, H. H. Williams, has not been making good use of the money that he has had given to him the administrator shall let him have no more, but keep it and expend it as I herein direct.  I give and bequeathe to my niece, Elanor R. Mock, one thousand dollars to be paid into her own hands, that she can have the spending of it to suit herself, she is of Chili township, Hancock county, Illinois; to her or to her children.

"I would like to have a sale made of my personal effects, and the little there should be coming payed in with the other,

and whatever debts may be contracted on my account, payed the first of anything; at this present writing I owe nothing but about two weeks board to *Mr.* Mosher, *Sen.* I do not want my administrator to pay Harris H. Williams only six hundred dollars in all, if he does do well with it. And I want the balance of my means to go to the relief of the Affican Kansas Freed Men's Association, with the exception of what it may cost to procure a grave stone for myself, and one for my son, and one for his daughter, and have them all set where they belong. And I hereby appoint *M* John C. Dunbar, of the town of Monmouth, of the county of Warren, and State of Illinois, as my administrator.

PERSIA N. WILLIAMS."

The will was written by the testatrix herself, duly proven, and admitted to probate in the county court of Warren county. It was also stipulated that the testatrix left personal property, which was inventoried and appraised, and that her executor has received from the proceeds of said property the sum of $2916.04. On the trial it was claimed by the defendant that the property in question passed, under the will, to the Kansas Freedmen's Relief Association, a corporation existing in Kansas under the laws of that State, and the circuit court sustained that view.

It will be observed that at the time the will was executed Persia N. Williams did not then own the property in dispute, but she purchased the same almost two months after she had made the will. In England, and in some of the States, property will not pass, under a will, which was acquired after the execution of the will, unless the will has been re-published. But such is not the law in this State. Here, the power to devise after-acquired property exists, and it is only a question of intention, to be determined from the language used in the will. As said in *Peters* v. *Spillman*, 18 Ill. 373: "It is a mere question of intention in the testator to pass such lands, and not a question of power, when the intention is clear."

The question, then, to be determined is, whether the language of the testatrix used in the will is sufficient to pass the title to this real estate to the corporation in Kansas. Does the language of the will manifest an intention on the part of the testatrix that this real estate, which she did not then own or possess, should go to the Kansas organization?

Neither the word "lands," "lots," nor "real estate" is mentioned in the will, although the testatrix owned, at the time she wrote the will, thirteen acres of land near Monmouth; and if the lots in question passed by the will, they must be included in the word "means," as the testatrix only devised to the African Kansas Freedmen's Association a certain portion of her "means." In order to arrive at the intention of the testatrix, it is proper to examine and consider all the provisions of the will. The word "means" is used first in the fore part of the will, and it seems quite plain from the use there made of the word by the testatrix, she intended to be understood as meaning personal property or money. She then requests her administrator not to pay Williams out of her means more than $300,—that is, $300 of her "means" (money) shall go to a certain person. Immediately following this language she provides, if Williams does not make good use of the money, "the administrator shall let him have no more, but keep it and expend it as I herein direct." What should be kept and expended as directed? Not lots or lands, but money, and the two parties to whom the money is to go are Mrs. Mock and the Kansas corporation.

Again, in the second clause of the will real estate is not mentioned or in any manner alluded to,—and this, too, is the clause relied upon by the defendant. In this clause of the will she directs a sale of her personal effects, and the proceeds paid in with the other, evidently meaning by the word "other" what money she had on hand before the sale of her personal property. Then she directs the payment of her debts,—of course, from the money on hand. Then follows a

provision for the payment to Williams of $300 more. This, of course, she intends to be paid out of the money on hand. Then follows this provision: "And I want the balance of my means to go to the relief of the Affican Kansas Freed Men's Association, with the exception of what it may cost to procure a grave stone for myself, and one for my son, and one for his daughter." From the beginning of the second clause of the will, where the testatrix orders a sale of the personal property, down to the end of the provision in reference to grave stones, real estate is not mentioned, and it is apparent from the language used that she had no reference to any property except money or personal property. Had the testatrix, in the first part of the second clause of the will, used language which might include real estate, and then said, "and I want the balance of my means to go," etc., there might be some ground for holding that the words "balance" and "means" referred to real estate; but such was not the case.

But it is said that the testatrix intended to devise appellant only $600, and this construction defeats that intention, and gives him more. It is no doubt true that the testatrix, so far as her will was concerned, intended to give appellant only $600, and that is all he gets, or can get, under the will. What may have been the motive or intention of the testatrix in making no disposition of the lots, but leaving them as intestate estate, is nowhere disclosed, and there is no room for conjecture. The fact that appellant may take the real estate as intestate property, in no manner defeats the intention of the testatrix, as shown by the will. The fact that the testatrix devised appellant only $600 in money, does not, in our judgment, show she did not intend that he might take the lots under the statute.

In conclusion, we are satisfied that the lots in question did not pass by the will.

The judgment of the circuit court will be reversed and the cause remanded. *Judgment reversed.*

Mr. Justice Mulkey: I do not concur in the opinion of the majority of the court. As I construe the will, after all the special bequests are paid the residue of the estate belongs to the Freedmen's Association. The word "means," in that connection, is used in the sense of "estate."

Mr. Justice Sheldon, dissenting.