(No. 19607.

ALBERT CURTIS ECKARDT, Appellee, *vs.* W. T. OSBORNE *et al.*—(THE AMERICAN TRUST AND SAFE DEPOSIT COMPANY, Exr., *et al.* Appellants.)

*Opinion filed February 21, 1930—Rehearing denied April 4, 1930.*

POPPENHUSEN, JOHNSTON, THOMPSON & COLE, and HARRY I. HANNAH, guardian *ad litem,* (FLOYD E. THOMPSON, of counsel,) for appellants.

CRAIG & CRAIG, (HARRY P. MUNNS, of counsel,) for appellee.

Mr. JUSTICE SAMUELL delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Coles county granting partition of three parcels of real estate situated in the city of Mattoon.

Henry Petillon and Mary Petillon, who were husband and wife, acquired title to the real estate in question as joint tenants on August 9, 1917, and continued to hold the same in joint tenancy until the death of Mary, which occurred on October 10, 1926. On May 18, 1923, Henry and Mary Petillon executed their joint will, the material provisions of which are as follows:

"Section No. 2. We give, devise and bequeath all the residue and remainder of our estates of whatever location or description, of which we, or either of us, die possessed, or over which we, or either of us, have power of disposition, or any interest whatsoever, including all diamonds and jewelry owned by either of us, and life insurance policies on either of our lives, each unto the other, meaning thereby that the survivor of us shall be the absolute owner of all that either of us possess.

"Section No. 3. In the event that our deaths should occur simultaneously, or approximately so, or in the same common accident or calamity, or under any circumstances causing doubt as to which of us survived the other, then, we hereby give, devise and bequeath our entire remaining estates unto the American Trust and Safe Deposit Company, an Illinois corporation, in trust, for the uses and purposes and with powers following, to-wit: Said trustee shall hold, manage, lease, care for and protect said trust estate and collect the income therefrom, and shall keep it invested in such manner as it seems for the best interest of the es-

tate, and is hereby authorized to invest it in first mortgages, or in first mortgage real estate bonds, including those offered and recommended by the American Bond and Mortgage Company. The entire net income from the estate shall be paid in quarterly installments to our adopted son, Albert Curtis Petillon, sometimes known as Albert Curtis Eckardt, of Chicago, throughout his entire life. During his lifetime, the trustee may use such reasonable sums from the principal from time to time as it, in its sole discretion, may deem necessary for the support of himself and family. It is our desire and intention in making this provision that the principal be reduced only in times of emergency or necessity and then only for necessary living expenses. Upon the death of Albert C. Petillon, the trust shall terminate and the principal, or so much of it as remains, shall be given to such child or children as he leaves him surviving, to be his, hers or theirs, absolutely."

At the time of the death of Mary Petillon she left surviving her her said husband and her adopted son, Albert Curtis Eckardt Petillon, the appellee, as her only heir-at-law. The following day Henry Petillon died, leaving surviving him the appellee as his only heir-at-law, and leaving as his will the instrument executed jointly with his wife on May 18, 1923.

By the fourth clause of the joint will the American Trust and Safe Deposit Company was nominated as executor, and on February 28, 1927, it was appointed executor of the will of Mary Petillon, deceased. The county and circuit courts of Coles county denied probate of the will as the will of Henry Petillon, and the American Trust and Safe Deposit Company appealed to this court, where the judgment of the circuit court was reversed and the cause remanded, with directions to admit the will to probate. (*American Trust and Safe Deposit Co.* v. *Eckhardt,* 331 Ill. 261.) On that appeal it was also decided that the third section of the will took effect, and that the property

of Henry and Mary Petillon passed to the trust company as trustee.

On December 12, 1928, appellee and his wife executed a quit-claim deed purporting to convey to W. T. Osborne an undivided one-half interest in the parcels of real estate here involved. Thereafter the appellee, under the name of Albert Curtis Eckardt, filed his bill for partition, alleging that upon the death of Mary Petillon her husband, Henry, became the owner in fee simple of the real estate in question; that the will of Henry was ineffective to pass the title to this real estate to the appellant the American Trust and Safe Deposit Company as trustee, for the reason that the will was not re-published after the death of Mary; that Henry died intestate as to said real estate, and that appellee, as his only heir-at-law, became the owner of the real estate in fee simple, and that he and Osborne were at the time of the filing of the bill seized in fee as tenants in common, subject only to the rights of tenants in possession. The two minor children of appellee, the American Trust and Safe Deposit Company and all tenants in possession were made parties defendant. The court appointed a guardian *ad litem* for the minor defendants, and he and the American Trust and Safe Deposit Company filed their general demurrers to the bill of complaint. The demurrers were overruled, and the American Trust and Safe Deposit Company having elected to stand by its demurrer, a decree *pro confesso* was entered against it. The guardian *ad litem* then filed a formal answer, and the cause was heard by the chancellor. The court held that Henry Petillon died intestate as to the three parcels of real estate in question because his will was not re-published after the death of his companion in the joint tenancy, and entered a decree for partition in accordance with the prayer of the bill. The American Trust and Safe Deposit Company as trustee, and Harry I. Hannah as guardian *ad litem* for the infant defendants, have prayed and perfected this appeal.

The principal question presented for our determination is whether or not the will of Henry Petillon was effective to pass title to the parcels of real estate involved without having been re-published after the death of Mary Petillon.

It is elementary that where property is held in joint tenancy the joint tenant first dying has no interest which can be devised. In one of the earliest texts dealing with the law of joint tenancy the rule is stated as follows: "Also, if there be two joyntenants of land in fee simple within a borough where lands and tenements are devisable by testament, and if the one of the said two joyntenants deviseth that which to him belongeth by his testament, etc., and deed, this devise is voide. And the cause is, for that no devise can take effect till after the death of the devisor, and by his death all the land presently commeth by law to his companion which surviveth, by the survivor, the which he doth not claime nor hath anything in the land by the devisor, but in his own right by the survivor according to the course of law, etc., and for this cause such devise is void." (1 Coke on Littleton, 185-B, chap. 3, Joyntenants, sec. 287.)

All of the cases which have been examined and which bear upon the question of devise by a joint tenant are cases in which the will involved was the will of one of the joint tenants dying, leaving one or more of his joint tenants surviving. In such a case it is obvious that the devise of a joint tenant so dying could not be effective to pass any title to the real estate so held in joint tenancy, for the reason that the title immediately passes by operation of law to the survivor or survivors.

No cases have been cited where the precise question here presented was involved. It is the established law of this State, however, that a will speaks as of the time of the testator's death, and whatever property he may have at that time and which is within the terms of the will and intended to be bequeathed or devised will pass to the legatees or devisees named in the will. (*Williams* v. *Johnson*,

112 Ill. 61; *Peters* v. *Spillman*, 18 id. 370; *Woman's Union Missionary Society* v. *Mead*, 131 id. 338.) Under this rule there is no reason why property acquired by a surviving joint tenant by reason of the death of his co-tenant should not pass by his will, provided the terms of the same are sufficiently broad and show an intention that all of the property owned by the testator at the time of his death shall pass under the will, unless there is some special reason why re-publication should be required. Counsel for appellee have assigned no reason why a re-publication should be required in order to make the will effective as to property so acquired by a surviving joint tenant, and we do not perceive any reasonable grounds upon which such requirement should be made.

Counsel for appellee rely upon certain statements of various text writers in support of their proposition. In Washburn on Real Property (vol. 1, 3d ed. p. 559,) the following statement is made: "A devise by one joint tenant of his share will be inoperative, inasmuch as the right of survivorship takes precedence of such devise. And so far does this principle prevail that if such devisor be himself the survivor he must re-publish his will after the survivorship has accrued in order to give it effect." The only case cited in support of this statement is *Duncan* v. *Forrer*, 6 Binn. (Pa.) 193. That decision does not support the text for the reason that the testator was not the surviving joint tenant, and the court made no comment upon the necessity of re-publication by a testator after the death of his co-proprietor in the joint tenancy. That question was not before the court.

In Kent's Commentaries (vol. 4, 10th ed. p. 480,) this statement is made: "If a joint tenant makes a will and he then becomes solely seized by survivorship, the will does not operate upon the title so acquired without the solemnity of re-publication." In support of this text the author cites *Swift* v. *Roberts*, 3 Burr. 1488. In that case the will in-

volved was not that of the surviving joint tenant, and the decision therefore does not support the statement of the text. Furthermore, the decision in that case was rendered prior to the Statute of Wills of 1 Vict., which first gave by specific language the right to dispose by will of property acquired after its execution.

Counsel also cite Ruling Case Law, (vol. 7, p. 813,) which contains the following statement: "If a joint tenant makes a will devising his interest in an estate held in joint tenancy and thereafter becomes solely seized by survivorship, it has been held that the will does not operate on the title so acquired without the solemnity of a re-publication." In support of the statement the author of the text cites *Johnston* v. *Johnston,* 173 Mo. 91, and *Bassler* v. *Rewodlinski,* 130 Wis. 26. In the *Johnston case* no will was involved and the question here presented was not before the court. In the *Bassler case* the testator was not the surviving joint tenant, and the question as to whether a testator who is the survivor must re-publish his will in order to make it effective to pass the property theretofore held in joint tenancy was neither considered nor decided by the court.

On the other hand, a number of text writers state the law to be that the will of a surviving joint tenant will pass the property theretofore held in joint tenancy without the necessity of a re-publication, provided the terms of the will are broad enough to include it. In Bigelow on Wills (p. 95) it is said: "Joint tenancy is subject, so far as it still retains its common law characteristic, to survivorship; that is, upon the death of one of the joint tenants the other or others become entitled to the interest of the decedent, and the right so acquired is superior to any claim as devisee or legatee of the deceased co-tenant. It follows that in the event of the death of one of the tenants in the lifetime of the other any attempt of the former to dispose of his

interest by will must be fruitless. If, however, the testator survive his associate (or all of his associates, if there be several,) the disposal will be good regardless of the fact that it was made in the lifetime of the latter, for under modern legislation it is enough that the testator had an interest capable at his death of being disposed of by will."

In the sixth English edition of Jarman on Wills, which deals with the law of wills under the English statutes, it is said on page 66: "Tried by the rule laid down by section 3 of the Wills act, (1 Vict. chap. 26,) it is obvious that a devise or bequest by a joint tenant of real or personal estate is void in the event of the testator dying in the lifetime of his co-proprietor, whose title by survivorship takes precedence of the claim of the devisee or legatee as it would of that of the heir or administrator of the predeceased joint tenant in case he had died intestate. If, on the other hand, the testator survive his companion in the tenancy, it is now unnecessary to inquire whether the devising joint tenant had become solely seized by survivorship at the period of the execution of his will. It is enough that he had acquired a devisable interest in the estate at the time of the decease." Statements to the same effect are contained in 1 Alexander on Wills, p. 298, Remsen on Preparation and Contest of Wills, chap. 5, sec. 11, and Thompson on Wills, p. 10. These last quoted statements of the text writers are more consonant with our views.

There is no ground, either upon reason or authority, for holding that a surviving joint tenant must re-publish his will in order to make it effective to pass the title to the real estate which had been held in joint tenancy prior to the death of his co-tenant, and if the language of the will of Henry Petillon was sufficiently broad to cover the real estate in question and showed an intention to dispose of all of the property which he should own at the time of his decease, the decree of the circuit court was erroneous and should be reversed.

In determining whether or not property of a testator passes by his will, the presumption is always indulged that he did not intend to die intestate as to any portion of his property, and the property acquired after the execution of the will will pass to the devisees therein named if the language can be construed as broad enough to include it. (*Woman's Union Missionary Society* v. *Mead, supra; Hull* v. *Hull,* 286 Ill. 75; *Watts* v. *Killian,* 300 id. 242.) The language of the second clause of the will of Henry Petillon is as follows: "We give, devise and bequeath all the residue and remainder of our estates of whatever location or description, of which we, or either of us, die possessed, or over which we, or either of us have power of disposition, or any interest whatsoever." In the third clause of the will, after providing for the contingency of death at approximately the same time, the testator devises and bequeaths to the appellant the American Trust and Safe Deposit Company "our entire remaining estates." We think this language was sufficiently broad to cover any property owned by the testator at the time of his death, and that it was clearly not his intention to die intestate as to any of his property. At the time of his death he was the owner of the real estate involved in this case, and his interest was that of sole owner and not that of a joint tenant. The question when or how he acquired title to the real estate is wholly immaterial. He owned it at the time of his death, and since the terms of his will were broad enough to include it and showed a clear intention to dispose of all of the property which he should at that time own, we must hold that this real estate passed to the American Trust and Safe Deposit Company under the third clause of the will.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*