PETER NUSSBACHER,

*Plaintiff and Respondent,.*

vs.

THEODORE P. MANDERFELD AND MARY MAN-
DERFELD,

*Defendants and Appellants.*

(No. 2365; November 18th, 1947; 186 Pac. (2d) 548)

For the defendants and appellants the cause was submitted on the brief of Jack Wolfe of Sheridan, Wyoming.

For the plaintiff and respondent the cause was submitted on the brief of R. E. McNally of Sheridan, Wyoming.

## OPINION

RINER, Chief Justice.

This is a proceeding by direct appeal to review a judgment of the district court of Sheridan County brought by Theodore P. Manderfeld and Mary Manderfeld, his wife, as appellants, they being the defendants in the trial court. The plaintiff, now the respondent, Peter Nussbacher, instituted the action to obtain a decree pursuant to the provisions of Chapter 127 Laws of Wyoming 1945 (W. C. S. 1945, Section 6-2715) declaring that the joint tenancy established by the instruments hereinafter mentioned had terminated and the estate and the property included therein was vested in Peter Nussbacher, the surviving joint tenant.

The material facts to be considered may be summarized as follows: During the month November 1927 Peter Nussbacher, the above named plaintiff married Margaret Schorkops whose first husband lived in Colorado, owned a farm there and their marriage had terminated by his death. The marriage of Peter and Margaret continued until on or about April 12, 1946 when she died. Shortly after their marriage Margaret, being in poor health, went to California where she stayed for some 13 years with occasional visits to Wyoming until 1940. Meanwhile Peter remained in this state, looked after their farm property in the vicinity of Sheridan, Wyoming and deposited the proceeds which arose from the farming operations in a joint bank account upon which both Peter and his wife were privileged to draw checks. It appears that nearly $3000 of the money in the bank owned jointly by both Peter and Margaret was spent for doctor bills for her. Peter also put $1000 of his own money and she put in the same amount in the building of a house that was erected on the premises which were ultimately sold prior to the purchase of the premises here involved.

After the year 1940 Margaret returned to Wyoming and lived with Peter upon their farm property until her death as above stated. Margaret appeared to be the one who had considerable money and with it prior to November 16, 1945 she purchased in the neighborhood of 2000 acres of land. Some of this land thus purchased was obtained at a comparatively small price per acre but the increase of real estate values enabled the couple to realize some considerable profit when the land was finally sold as hereinafter detailed. It is apparent that much the larger amount of funds for these land purchases was supplied by Margaret but some funds and some property were also furnished by Peter. The business affairs of these two married folks, as frequently is the case, were so intermingled it is not clear from the record exactly how much each contributed to these land and property accumulations.

As already stated, Margaret's health was not good and in order to be closer to the City of Sheridan where hospital facilities were available, the Nussbachers sold their land holdings obtained as above recited and on or about November 16, 1945 purchased certain real estate situated in Sheridan County, Wyoming for a stated consideration of $23,300, $7,300 being the amount paid for the property conveyed in one deed and $16,000 being the recited purchase price set forth in the other. Both instruments were dated November 16, 1945. These two conveyances by which the Nussbachers acquired title to these lands each transferred the ownership of the described properties therein to the grantees, Peter and Margaret Nussbacher, as "husband and wife as joint tenants with the right of survivorship and not as tenants in common". The instruments were thereafter duly recorded in the Office of the County Clerk and Ex-Officio Register of Deeds of Sheridan County and the purchasers took possession of the prem-

ises and continued to occupy them as their home until Margaret's death occurred.

On April 5, 1946, about a week before she died, Margaret undertook by a will duly signed and witnessed to "give, devise and bequeath"—and here we quote the language of the instrument—"my interest in the real estate which I and my husband own jointly to my nephew, Theodore P. Manderfeld"; also to "give and bequeath unto Mary Manderfeld, wife of my nephew aforesaid, all of my personal estate". Peter Nussbacher was named as executor of the will to serve without bond. This will was in due course admitted to probate and he was appointed and has qualified as executor thereof.

About April 21, 1946 Peter Nussbacher filed his petition in the district court of Sheridan County for the termination of the ownership and estate of his wife Margaret Nussbacher in the real property included in the two deeds above mentioned, pursuant, as we have said, to Chapter 127, Laws of Wyoming 1945. Due proceedings were had in accordance with that statute and a date for hearing upon said petition and the proofs thereunder to be submitted was set by the court. Prior to the date of the hearing, however, Theodore P. Manderfeld and Mary Manderfeld, the defendants herein, filed an answer and cross petition, the answer containing four separate alleged defenses and the cross petition seeking the reformation of the two deeds aforesaid by striking therefrom the words "as joint tenants with the right of survivorship and not," thereby retaining the words "as tenants in common". These alleged defenses of the answer undertook to set up the claim of a resulting trust, as existing regarding the properties transferred by the two deeds aforesaid, for the benefit of the Manderfelds "as legatees and devisees under the express provisions of said Last Will and

Testament of said decedent", Margaret Nussbacher, it being alleged that she "furnished 96% of the purchase price" of these lands from her own separate estate. These defenses also endeavored to invoke the provisions of Section 47-101 W. R. S. 1931 (Section 5-101 W. C. S. 1945) commonly known as the Statute of Frauds, it being averred that Peter Nussbacher sought "to charge the decedent (Margaret Nussbacher) and her estate with a purported agreement which was never subscribed or signed by her", thereby referring to the survivorship clause in the two conveyances described above. Peter Nussbacher filed his reply thereto and issue was joined thereon.

Upon the conclusion of the trial which was to the court without a jury, in disposing of the crucial questions in the litigation before it, the court found:

"That the aforesaid conveyances to Peter Nussbacher and Margaret Nussbacher, 'as husband and wife, as joint tenants with right of survivorship, and not as tenants in common', created in the said Peter Nussbacher and the said Margaret Nussbacher a joint tenancy in said land and that upon the death of the said Margaret Nussbacher the said Peter Nussbacher, her surviving spouse, became, ever since has been, and now is, the sole and absolute owner in fee simple of a good and indefeasible title to said lands and premises and that upon the death of the said Margaret Nussbacher her interest, right, title and ownership in and to said property ceased and terminated and that the terms and provisions of her Last Will and Testament bearing date April 5, 1946, were ineffectual and of no validity whatsoever as a devise of her interest in said property, her death having terminated such interest as she had in her life time.

"That all steps have been legally taken herein pursuant to Chapter 127, Session Laws of Wyoming, 1945, in order to effectuate the extinguishment of the title of the said Margaret Nussbacher in and to the said lands hereinafter particularly described."

Judgment was rendered in accord with these findings and it is this judgment of which complaint is now made.

It should be especially mentioned also that the district court made a general finding "in favor of the plaintiff and against the defendants on all of the issues" in the case. That being so, what was said in Dulaney vs. Jensen, 63 Wyo. 313, 181 Pac. 2d 605 and cases there cited becomes apropos. As a reminder and aid to the profession we again quote:

"Where appellant comes here with a general finding of the trial court against him, as is true in the case at bar, this court has indicated the effect to be given that finding in these words: 'And in causes tried to a court, a general finding is one of every special thing necessary to be found to sustain the judgment.' Hinton v. Saul, 37 Wyo. 78, 96, 259 P. 185, 191. See also Jacoby v. Town of City of Gillette supra where the effect to be give in an appellate court of a general finding of the trial court upon controverted facts in a case was considered (page 514 of 174 P. 2d) and the language of the Supreme Court of Kansas in Knaggs v. Mastin, 9 Kan. 532, 533, was quoted remarking that such facts 'must always be presumed * * * are established in favor of the party for whom the court finds'. (174 P. 2d 514). The case of Wallis v. Nauman, Wyo., 157 P. 2d 285, 286, supplies additional authorities touching this point."

We accordingly direct attention to the testimony of certain witnesses who testified on the trial of the case concerning the execution of the two deeds which each contained the clause relative to the grantees "as joint tenants with right of survivorship and not as tenants in common", keeping constantly in mind the rules last above stated.

N. V. Kurtz, the lawyer who supervised the preparation of these two deeds to the real property in controversy stated on direct examination as a witness for the

plaintiff: That the two instruments aforesaid were prepared under his direction; that he is sure that on one occasion both Peter and Margaret Nussbacher were present when the deeds bearing date of November 16, 1945 were executed; that he told the Nussbachers the meaning of that phraseology; that he told them,—to use the witness's exact language:—

"On this first deed Margaret Nussbacher and Peter Nussbacher were both present. I speak of the first deed as being the deed from J. W. Miller and Goldie G. Miller as grantors, because this was executed first and the sale of that land was made first. The deed from Thorntons and Miller to the Nussbachers was made subsequent to the making of the first one. In other words, the deed from Millers to Nussbacher, the land described in it was purchased first and later the land from Thorton and Miller was purchased. Peter was present in my waiting room and I was talking to him. He was standing beside the table. Margaret was seated possibly five or six feet from him at the end of the table in a rocking chair and in reading this deed to them, when I came to the grantee, I explained to Peter and to both of them, or, rather, stated to both of them, the meaning of that of joint tenants with right of survivorship. I am sure Peter heard me. He said "That's the way we want it';"

that he explained to the Nussbachers that if one died the other would own the property; that he told them "that means if one dies the other gets it". On cross examination this witness also said that he could not say Margaret heard what he said when he was explaining the legal import of that phrase "with right of survivorship;" that he knows that Peter did; that she was sitting in a rocking chair about five or six feet from where Peter and Kurtz were; that she was ill that day having difficulty with a nose bleed at the time; that she had recently been in the hospital; that she was not present when the second deed was made; that these two deeds were not made at one and the same time; that she did

not sign the deed, it being signed only by the grantors. On re-direct examination this witness stated: That when he explained the effect of this clause in the deed to the Nussbachers, Mrs. Nussbacher said nothing; that Peter said "that's the way we want it"; that that remark was made in her presence and there was no objection made by either Peter or Margaret when the explanation was given.

On cross examination the plaintiff testified that at the time he and his wife bought the Miller place Mr. Kurtz said that if he (plaintiff) died, all his property would go to Margaret and if she died all her property would go to him; that she understood that.

J. W. Miller, one of the grantors in the deed first executed which conveyed the Wes Miller place to Margaret and Peter Nussbacher called as a witness for the defendants stated on direct examination: That he was not related to the Nussbachers at all. In the course of his direct examination the following questions and answers appear:

"Q. Did you ever hear Margaret Nussbacher discuss with Peter Nussbacher the type of clause that should be put in the habendum clause here, that it should be joint tenants with right of survivorship and not as tenants in common? Did you ever hear them agree on that?

"A. She discussed this with my wife and I, and Peter Nussbacher, all four of us.

"Q. Was that in Mr. Kurtz's presence?

"A. We was waiting for Mr. Kurtz."

On his cross examination the same witness answered questions as follows:

"Q. Mr. Miller, tell us about this conversation that took place out in the Kurtz reception room when Mrs. Miller and you were there, and Margaret Nussbacher and Peter. Just what was said?

"A. I don't remember just how it came up. We were talking about making deeds and how they should be made, to be made so that if one should pass away the other would get the property, and my wife and her was talking and we was listening most of the time, and my wife and I had discussed this beforehand, how we wanted our deeds made, and they were discussing the same thing at that time, how the deeds should be made to be made to man and wife or survivor.

"Q. Did Margaret understand this deed the way it is made?

"A. Well, from the way she talked she undoubtedly did because they were talking about it, the way she wanted it if she passed away he would get it; and if he passed away she would get it."

On his re-direct examination these questions and answers appear in the record:

"Q. Did Mr. Kurtz come in and did they tell him how to make that deed after that?

"A. I don't remember as to that.

"Q. In fact, you don't remember for sure that Margaret ever said a word, do you?

"A. Yes. When Mr. Kurtz explained it to them they both said that was the way they wanted it."

Goldie G. Miller, wife of J. W. Miller and who joined with her husband as one of the grantors in the deed to the Wes Miller property aforesaid, responded to questions as follows:

"Q. Will you please just go ahead, Mrs. Miller, and tell Judge Burgess what it was that was said there in Kurtz' office at that time while you were waiting for Kurtz, I understand?

"A. Well, the first thing we were talking about was the Safeway Store. Mrs. Nussbacher told me she was going to have survivorship papers put in because she said if anything happened to her it would go to Mr. Nussbacher, and if anything happened to Mr. Nussbacher it would go to her. She understood it.

"Q. Was there a further discussion of that same thing up at Mr. Kurtz' office?

"A. We talked about that up at the office. She also talked to me about that in November just as we were leaving out there, ten days or more. She mentioned about having it all fixed because her health wasn't too good and she said they had it all fixed up so there would be no trouble about either one of them.

"Q. Did you see these two deeds that have been introduced in evidence? You signed both of those two deeds, and this conversation at Kurtz' office was made at the time? At the time one of these deeds was signed?

"A. Yes."

With the facts and testimony recited above before us we pass to a consideration of the points urged on behalf of appellants, questioning the correctness of the judgment rendered by the district court.

It is contended by them that:

"The purported survivorship agreement, whereby Peter Nussbacher seeks to charge that decedent created an interest in real estate in himself, bears no signature on her part and is therefore void, under the express provisions of the Statute of Frauds."

No satisfactory supporting authorities are drawn to our attention in aid of this position. It is sufficient to remark that we consider this claim as without merit. It appears to overlook entirely the principle as stated in 27 C. J. 321, Section 405 that:

"It is well settled that the statute of frauds applies only to executory contracts, and not to agreements which have been completely executed and performed on both sides. In such case, the rights, duties and obligations of the parties are entirely unaffected by the statute."
Other reasons leading to the same conclusion could also be readily supplied.

Due to the fact that the wife, Margaret, supplied most of the money with which the property included

in the two deeds aforesaid was purchased, it is insisted that a resulting trust arose in her favor in said property as against her husband Peter, which Theodore P. Manderfeld may enforce under the terms of Margaret's will which have been above set forth. On this point much stress is laid and many cases are cited. We have examined them and find none based upon a record such as we have before us. A brief consideration of the nature of a resulting trust where title is taken as appears here upon such payment being made by the parties for the conveyances as has been described above, will be helpful in resolving the point urged.

The general rule as 65 C. J. 382-385, Section 154 states it to be is:

"the general rule is well settled that, *in the absence of circumstances showing a different intention or understanding,* property paid for with the money or assets of one person, title thereto being taken in the name of a stranger or person for whom he is under no legal or moral obligation to provide, is held by resulting trust, the trust arising by operation of law in favor of the person furnishing the consideration, or persons claiming under him, and the person thus obtaining title is a trustee for the person paying the consideration. While the trust does not arise from contract or agreement of the parties, but from their acts, *an intention that the grantee is not to receive and hold the legal title as beneficial owner is an essential element to the creation of the trust."* (Italics supplied.)

So 54 Am. Juris. 158, 159, Section 203 declares:

"It is a general rule of equity jurisprudence that a resulting trust arises in favor of a person from whom a consideration comes for a conveyance of property, whether realty of personalty, to another, where the parties are strangers to each other in the sense that there is no domestic relationship giving rise to a meritorious consideration; *but the trust is rebuttable by proof of a contrary intention of the person from whom the consideration comes, and such proof may be by parol evidence, such evidence not being prohibited ei-*

*ther by the statute of frauds or the parol evidence rule.*"
(Italics supplied.)

In Daily vs. Spann, 112 Conn. 455, 152 Atl. 583 in discussing a situation where the wife had supplied money to her fiance who subsequently became her husband to buy real property and it was urged that a resulting trust arose in her favor the appellate court upholding the trial court in deciding otherwise said:

"A resulting trust from the payment of the purchase price of property, title to which is taken in the name of another, rests upon a presumed intent of the parties that the beneficial interest shall be in the person furnishing the money, Dolan v. Dolan, 107 Conn. 342, 348, 140 A. 745; and it cannot be based upon a gift of money made to that other, even though it was made for the purpose of enabling him to acquire the property. 'If the transaction constituted a gift or loan to the husband, of course no trust can result regardless of the intention of the parties'. 1 Perry, Trusts (7th Ed.) § 144. See, also, section 132."

The Restatement of the Law of Trusts in Section 441, p. 1347 asserts that:

"A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise."

Commenting on this rule (p. 1350) we find it stated:

"The fact that the payor takes title to property in the name of himself and another jointly is an indication of an intention of the payor to make a beneficial gift of an undivided interest in the property to the other person; and in the absence of evidence of a different intention of the payor, the other person does not hold his interest upon a resulting trust for the payor. This is true whether the transfer was made to the payor and the other person as joint tenants or as tenants in common".

Section 442, page 1355 of the same text in more detail says:

"Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property."

The comment immediately following this statement is: "The application of the rule stated in this Section is not determined by the closeness of the relationship or the extent of natural affection between the payor and the transferee. It is rather a question of whether the transferee stands in such a relationship to the payor that it is probable that the payor intends to make a gift to the transferee. It is inferred that he does intend to make a gift if the transferee is by virtue of the relationship a natural object of his bounty.

"The rule stated in this Section is applicable where the payor and transferee respectively are in the relation of husband and wife; father and child; mother and child; father-in-law and son-in-law; grandparent and grandchild."

Under both the general and special findings of the trial court with, as it seems to us, ample substantial evidence to support them, there was no intent on the part of Mrs. Nussbacher when the purchase money was paid and the two conveyances taken for the property in controversy, to claim a resulting trust in her favor. All the testimony reviewed above upholds the conclusion of the trial court and repels such an intention on her part. She evidently understood perfectly what was being done and the conveyances as drawn undoubtedly expressed the intention of both husband and wife and as Mr. J. W. Miller, the defendants' witness and one of the grantors in the instrument transferring the Wes Miller place, testified, both Margaret and Peter informed the conveyancer Kurtz "that was the way they wanted it." Of course any conflicts in the evidence must necessarily be resolved in favor of the trial

court's findings. We are unable to discover that there was any error on the part of the district court in deciding against the existence of a resulting trust as claimed by the defendants.

The rights, if any he had, of Theodore P. Manderfeld arise as a consequence of the will executed by Mrs. Nussbacher when she was in the hospital and just a week before her death. May one joint tenant in an estate with right of survivorship as presented in the case at bar destroy that right as it is held by the other joint tenant, through the means of a devise of his or her interest in the property after the creation of such a tenancy? The authorities from the earliest times are quite clear that this question must be answered in the negative. I Coke upon Littleton, 185 b., Chapter 3 of Joyntenants, Section 287, in its quaint old English says:

"Also, if there be two joyntenants of land in fee simple within a borough where lands and tenements were devisable by testament, and if the one of the said two joyntenants deviseth that which to him belongeth by his testament, etc. and dieth, this devise is voide. And the cause is, for that no devise can take effect till after the death of the devisor, and by his death all the land presently commeth by law to his companion, which survibeth, by the survivor; the which he doth not claime, nor hath any thing in the land by the devisor, but in his own right by the survivor according to the course of law, etc. and for this cause such devise is void."

Citing the passage last quoted, Sir William Blackstone elaborates the point:

"But a devise of one's share by will is no severance of the jointure: for no testament takes effect till after the death of the testator, and by such death the right of the survivor (which accrued at the original creation of the estate, and has theretofore a priority to the other) is already vested." (1 Cooley's Blackstone (4th edition) Bk. II Ch. 12, Section 185.)

Passing down through the centuries the same rule is still declared by our modern authorities: 48 C. J. S. 928, Section 4 says:

"So, also, there can be no severance of a joint tenancy by devise, since the right of survivorship takes precedence thereof, unless such severance is permitted by statute."

and 14 Am. Juris. 87, Section 14 is to the same effect:

"Since such severance, to be effective, is required to occur during the lifetime of the joint tenant, it is clear that a devise by such a tenant is inoperative."

The current (1946) cumulative supplement to the text last cited page 12 adds:

"The devisee of a joint tenant first dying is ineffective, since the title to the joint property immediately passes by operation of law to the survivor or survivors."

We are therefore not surprised to find the Supreme Court of Illinois in Eckardt vs. Osborne, 338 Ill. 611, 170 N. E. 774 saying briefly:

"It is elementary that where property is held in joint tenancy the joint tenant first dying has no interest which can be devised."

The opinion in the case of Dimock vs. Corwin, 99 Fed. 2d (C. C. A. 2d Cir.) 799 somewhat more in detail uses this language:

"Joint tenancies at common law and tenancies by the entirety have one marked similarity—it is the incident of the right of survivorship. Such right is the immediate consequence of the peculiar mode in which joint tenants are seized, that is, of the whole jointly but of nothing separately. The difference between the two classes of tenancies is the right which exists in a joint tenant, and not in a tenant by the entirety, to sever the tenancy by his sole act as an inter vivos transaction, and thus destroy the right of survivorship. Unless a joint tenancy be severed during the lives of the joint tenants, the right of survivorship persists, and upon

the death of one of the joint tenants, the survivor takes the whole estate. Neither joint tenant can dispose of any interest in the property by will and defeat the right of survivorship of the whole."

The decision in this case was later affirmed by the United States Supreme Court, 306 U. S. 363, 59 Sup. Ct. 551, 83 L. Ed. 763.

See also 33 C. J. 908, Section 10; Bassler vs. Rewodlinski 130 Wis. 26, 109 N. W. 1032; Dando vs. Dando, 37 Cal. App. 2d 371, 99 Pac. 2d 561; Geist vs. Robinson, 332 Pa. 44, 1 Atl. 2d 153; Hoffert vs. Bastian, 54 D. & C. (Pa.) 146.

Under the evidence in the case we are unable to perceive that any ground exists for a reformation of the two conveyances as sought by the cross petition; there was no mistake of any kind.

There was a motion to dismiss this appeal filed by the respondent but in view of the conclusion we have to announce, we prefer to dispose of the cause upon its merits.

Upon the whole record, therefore as submitted and argued by brief, we are convinced that no reversible error is disclosed and consequently we conclude that the judgment of the district court of Sheridan County should be affirmed.

*Affirmed.*

BLUME, J., and KIMBALL, J., concur.