Mario **THOMASI** and Doris Thomasi, Appellants (Defendants),

v.

Linda **KOCH**, Administratrix and Personal Representative of Edra Vaughn Bainbrich, Deceased, Appellee (Plaintiff).

No. 5776.

· Supreme Court of Wyoming.

March 24, 1983.

Neil J. Short, and Michael J. Krampner, Casper, for appellants.

C.L. Harden, and William W. Harden, Casper, for appellee.

Before ROONEY, C.J.,* and RAPER, THOMAS, ROSE,** and BROWN, JJ.

THOMAS, Justice.

This appeal raises the question of whether a constructive trust in real property can be found to exist under Wyoming law in the absence of adequate proof of a fiduciary relationship or a close family relationship. A secondary issue is raised with respect to the sufficiency of the evidence to satisfy a standard which requires clear and convincing evidence. The district court ruled that a constructive trust had been established, and awarded the property to the appellee. We shall affirm the district court.

The property which is the subject matter of this case consists of a building located on all of one lot and a portion of another lot in the City of Casper in Natrona County, Wyoming. It was purchased by Mrs. Edra Vaughn Bainbrich, the appellee's decedent, in 1948 for an apparent consideration of $6,600. From that time until the death of Mrs. Bainbrich in 1980 the property was used as a dance school, and was known as the Bainbrich School of Dance. During this entire period Mrs. Bainbrich and her husband, Clay Bainbrich, continued to exercise total dominion over the property. The Bainbriches paid all utility bills; they paid all tax notices through 1979; and subsequent to the transfer of the property to the Thomasis they even granted the telephone company an easement across the property. In all respects the Bainbriches treated the property as their own until the death of Mrs. Edra Vaughn Bainbrich.

* Became Chief Justice on January 1, 1983.　　** Chief Justice at time of oral argument.

Sometime prior to the early months of 1968, possibly around Christmastime of 1967, the Bainbriches and a passenger in their automobile were involved in an automobile accident. According to the reports of the case in the Colorado Court of Appeals and the Colorado Supreme Court, the accident involved the automobile, which was driven by Mr. Bainbrich, skidding on the ice and colliding with a guardrail resulting in injuries to the passenger. *Bainbrich v. Wells,* 28 Colo.App. 432, 476 P.2d 53 (1970), affirmed *Wells v. Bainbrich,* 176 Colo. 503, 491 P.2d 976 (1971). During the pendency of this action brought by the passenger, Mrs. Bainbrich sought advice of counsel with respect to divesting herself of the title to the property in Casper for the purpose of placing it beyond the reach of creditors. Wyoming counsel testified that the intention of Mrs. Bainbrich and her husband was to transfer the property until the conclusion of the legal action in Colorado, but to arrange to have the property reconveyed to them after the disposition of the Colorado litigation. Their Wyoming attorney refused to prepare the deed which was requested by the Bainbriches for this purpose.

Subsequently, on March 8, 1968, Mrs. Bainbrich executed a warranty deed to Mario Thomasi and Doris Thomasi. The deed was executed in Denver, Colorado. Mr. Bainbrich testified that prior to the execution of this deed he obtained $4,000 in cash from a safety deposit box in Casper, and that he gave this money to Doris Thomasi in Denver, Colorado, on the date of the conveyance. The $4,000 was deposited in the Thomasis' checking account, and a check for that same amount was made to Mrs. Bainbrich as consideration for the warranty deed. The record justifies a conclusion that Mrs. Bainbrich selected the Thomasis to be the grantees of this deed because of a close, warm friendship which she had with Doris Thomasi. Their relationship began in the mid-1950s with their introduction by Mrs. Bainbrich's sister, who then was married to Doris Thomasi's brother. The intimacy of their relationship appears from the testimony of Doris Thomasi describing an earlier automobile accident in which Mrs. Bainbrich was injured and following which she came to the Thomasis' home and was taken care of by Doris Thomasi while she was recuperating from her injuries. The Thomasis concede the existence of a close and warm relationship as friends between Mrs. Bainbrich and Doris Thomasi.

The record discloses that following the transfer of the property in question to the Thomasis the deed was retained by the Bainbriches, and they took it to Casper, Wyoming, where they recorded it in the office of the county clerk. From that time until after Mrs. Bainbrich's death the Thomasis did nothing to exercise any dominion over the Casper property. No mention of that property was made in an extensive property settlement agreement entered into by the Thomasis immediately preceding the dissolution of their marriage in 1974. They did not pay taxes on the property; they did not insure the property; and they even forgot that they had any ownership of the property. They never even had a key. It was only after Mrs. Bainbrich's death that the Thomasis took any action concerning the property. Upon being contacted by the attorney for the estate who requested the return of the property, the Thomasis then began paying taxes on the property, and they listed it for sale at a price of $145,000 with a Casper real estate agency. The explanation offered with respect to the history of the Thomasis in ignoring their interest in the property was that the use of the property during the intervening years by the Bainbriches was permissive.

Following a trial to the court, an opinion letter in favor of the appellee was directed to the parties by the district court. The Judgment of the court which was entered later incorporated the following pertinent findings which were consistent with the opinion letter:

"3. There existed on March 1, 1968, and for sometime prior thereto a relationship of trust and confidence and a pattern of content which bespeaks the intent to create a fiduciary relationship between Plaintiff's decedent and Defendant.

"4. That the consideration recited in the warranty deed of March 1, 1968, from Plaintiff's decedent to Defendants was a sham and in fact there was a total failure of consideration for the transfer of said property to Defendants.

"5. That to permit Defendants to retain Plaintiff's decedent [sic] property would result in unjust enrichment to the Defendants.

"6. That the purpose of the transfer of Plaintiff's decedent [sic] property to the Defendants was to protect Plaintiff's property from creditors and the purpose of such transfer was understood and intended by all.

"7. That Defendant[s] do not now have and have never had any ownership interest in said property and hold bare legal title thereto, in trust for the Plaintiff's decedent."

The court then made its judgment in the following form:

"THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendants hold the subject property at 460 South Oak Street and more particularly described as follows:

"Lot 12, and the North 35 Feet of the East 95 and ½ feet of Lot 11, Block 21, City of Casper, Natrona County, Wyoming

"together with all improvements thereon situate upon a constructive trust for the benefit of Plaintiff.

"IT IS FURTHER ORDERED, that by virtue of imposing a constructive trust upon Defendants and by declaring that Defendants are unjustly enriched and that the consideration cited was a sham and that the deed transferring the property into Defendants['] name is a nullity and is void and of no force and effect and that the title be, and hereby is, quieted and confirmed in the name of Plaintiff's decedent, Edra Vaughn Bainbrich."

It is from this judgment that the Thomasis have taken their appeal in this case.

In presenting their appeal the Thomasis articulate the issues, the resolution of which they argue will result in a favorable decision for them, as follows:

"(1) Can a constructive trust be found to exist in the absence of either a fiduciary relationship or a close familial relationship between transferor and transferee at the time of the transfer or conveyance?

"(2) Is the contested parol evidence adduced by Appellee at trial sufficient to establish clear and convincing proof that a fiduciary relationship existed, and that a constructive trust was established in this case?"

The appellee in her brief asserts a more simplistic single issue, which she states as follows:

"The sole issue before the court is whether or not the trier of facts' findings are clearly erroneous or so totally at odds with the evidence as to be irrational."

■ We do not find a requirement in the jurisprudence of the State of Wyoming that a constructive trust can only be found if a fiduciary relationship or a close family relationship exists between the transferor and transferee at the time that the property is transferred. We reiterate the close, warm and friendly relationship between Doris Thomasi and Mrs. Bainbrich. It does seem that the question of the type of relationship required to impose a constructive trust is one of first impression with this court.[1] In prior cases, however, this court has recognized that one of the primary purposes for which a constructive trust will be imposed is that of preventing unjust enrichment. *Fuller v. Fuller,* Wyo., 606 P.2d 306 (1980); *Flohr v. Walker,* Wyo., 520 P.2d 833 (1974); and *McConnell v. Dixon,* 68 Wyo. 301, 233 P.2d 877 (1951). The facts of this case, as found by the district court, lead ineluctably to the view that unjust enrichment would

1. Our disposition does not require that this court decide whether under these circumstances a resulting trust in favor of Mr. Bainbrich would arise. See *McConnell v. Dixon,* 68 Wyo. 301, 233 P.2d 877 (1951); *Nussbacher v. Man-derfeld,* 64 Wyo. 55, 186 P.2d 548 (1947); *Culver v. Graham,* 3 Wyo. 211, 21 P. 694 (1889); Restatement (Second), Trusts 2d, §§ 440, 444 (1959); Bogert, Trusts and Trustees, § 454 (1977); 5 Scott on Trusts, § 440 (3rd ed. 1967).

result should a constructive trust not be imposed by the law.

While serving on the bench of the State of New York, Justice Cardozo tellingly stated the inherent qualities of a constructive trust as a remedial and flexible device:

" * * * A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.

\*    \*    \*    \*    \*    \*

" * * * A court in equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380, 381 (1919).

Similar expressions of the nature and quality of a constructive trust are found in many other opinions. See, e.g., *McConnell v. Dixon,* supra, 233 P.2d at 887; *Johnson v. American National Insurance Company,* 126 Ariz. 219, 613 P.2d 1275 (1980); *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979); *Kam Oi Lee v. Fong Wong,* 57 Hawaii 137, 552 P.2d 635 (1976); *Cacy v. Cacy,* Okl., 619 P.2d 200 (1980); *Pantano v. Obbiso,* 283 Or. 83, 580 P.2d 1026 (1978); and *Scymanski v. Dufault,* 80 Wash.2d 77, 491 P.2d 1050 (1971). One of the recognized texts in this area states the applicable concept in this way:

"There are numerous cases to the effect that, where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in pro-

curing the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise. A constructive trust is imposed even though there is no fiduciary relation such as that between attorney and client, principal and agent, trustee and beneficiary; it is sufficient that there is a family relationship *or other personal relationship of such a character that the transferor is justified in believing that the transferee will act in his interest.*" (Footnotes omitted.) (Emphasis supplied.) 1 Scott on Trusts, § 44.2, pp. 337–339 (3rd ed. 1967).

When other courts have been called to deal with the issue presented by this case they have eschewed any attempts to define and circumscribe the types of confidential relationships which may give rise to the imposition of a constructive trust in any sort of comprehensive or precise rules. Instead it appears that each case is to be considered in the light of the general requirement that the relationship be of the sort which would justify the transferor in placing confidence in and relying upon his transferee to act in his interests, and the case then resolved upon the application of that proposition to its particular facts. *Steinberger v. Steinberger,* 60 Cal.App.2d 116, 140 P.2d 31 (1943); *Jackson v. Tibbling,* Mo., 310 S.W.2d 909 (1958); *Sharp v. Kosmalski,* 386 N.Y.S.2d 72, 40 N.Y.2d 119, 351 N.E.2d 721 (1979); *Pantano v. Obbiso,* supra; *Tuck v. Miller,* Tex.Civ.App., 483 S.W.2d 898 (1972); and *Joerres v. Koscielniak,* 13 Wis.2d 242, 108 N.W.2d 569 (1961). See also *Henry v. Goodwin,* 266 Ark. 95, 583 S.W.2d 29 (1979); *Hanger v. Hess,* 49 Idaho 325, 288 P. 160 (1930); *Catalani v. Catalani,* 124 Ind. 54, 24 N.E. 375, 19 Am.St.Rep. 73 (1890); *Wildfang-Miller Motors, Inc. v. Miller,* N.D., 186 N.W.2d 581 (1971); Restatement of Restitution, § 182, Comment (c) (1937); Restatement (Second), Trusts 2d, § 2, Comment (b) (1957); and Bogert, Trusts and Trustees, § 482 (1977). The facts encompassed in this record fit comfortably within the parameters of the fore-

going authorities. Where actual confidence and trust is reposed in the transferee to act in the transferor's interests, as is true in this instance, a constructive trust should be and will be imposed if it is necessary to prevent unjust enrichment.

■ The Thomasis in presenting their argument rely upon the following quotation from *Carpenter & Carpenter v. Kingham,* 56 Wyo. 314, 349, 109 P.2d 463, 476, mod. & reh. denied 56 Wyo. 314, 110 P.2d 824 (1941):

"Moreover, a mere promise, without more, to protect any interest which the plaintiff had would not, at least in the absence of confidential relationship, as here, be sufficient to make the defendant a constructive trustee. In order that the doctrine of trusts ex malificio with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal; there must be an element of positive fraud accompanying the promise and by means of which the acquisition of the legal title is wrongfully consummated. * * * "

Within the language of the quoted matter there appears an exception for the instance in which a confidential relationship, like that present in this case, is coupled with a promise to reconvey or hold the property in trust for the transferor. Furthermore, in our judgment the facts as presented by this record are distinguishable from those found in *Carpenter & Carpenter v. Kingham,* supra. Even if this distinction were not present, we prefer the view of those cases which hold that where there is a confidential relationship and the transfer is made in reliance upon that relationship an express promise need not be proven. An example is found in *Sharp v. Kosmalski,* supra, 351 N.E.2d at 723, in which the court said:

"* * * In such a situation, a promise may be implied or inferred from the very transaction itself. As Judge Cardozo so eloquently observed: 'Though a promise in words was lacking, the whole transaction, it might be found, was "instinct with an obligation" imperfectly expressed [citation]' * * *."

■ In support of their second issue the appellants argue that there was not sufficient evidence to establish the requisite elements of a constructive trust by clear and convincing proof. The trial court, not this court, is charged with the function of weighing conflicting testimony and evidence. The general rule is that so long as there is sufficient evidence upon which the trial court could rationally base its findings, such findings will not be adjusted in any way by the appellate court. *Palmeno v. Cashen,* Wyo., 627 P.2d 163 (1981); *Madrid v. Norton,* Wyo., 596 P.2d 1108 (1979). This case is typical in one respect, and that is that the evidence is conflicting on many key issues such as the intent of the parties at the time of the transaction, whether there was a promise to reconvey, who provided the consideration for the sale, whether the continued use and occupation of the premises by the Bainbriches was permissive, and other significant matters. Yet under the view of the evidence which this court must take, we agree with the conclusion of the district court that the necessary elements of a constructive trust were established by clear and convincing evidence. The circumstances leading up to the decision to make the transfer are not the subject of any disagreement by the parties. When the transaction is viewed in the light of the motive the following events viewed in the light most favorable to the appellee become clear and convincing.

■ The foregoing rules serve to remind us that it is the district court, not this court, which must be satisfied that there was clear and convincing evidence sufficient to establish a constructive trust. *Ward v. Waterman,* 85 Cal. 488, 24 P. 930 (1890). The only question we must resolve is whether the evidence viewed in the light most favorable to the appellee and ignoring any evidence in favor of the Thomasis is sufficient to make out a prima facie case. *Ward v. Waterman,* supra. This court previously has adopted language to this effect:

"* * * When the evidence is such that the mind readily reaches a satisfactory

conclusion as to the existence or nonexistence of a fact in dispute, then the evidence is, of necessity, clear and satisfactory." *Continental Sheep Co. v. Woodhouse,* 71 Wyo. 194, 202, 256 P.2d 97 (1953), quoting language found in *Good Milking Mach. Co. v. Galloway,* 168 Iowa 550, 150 N.W. 710, 712 (1915). We further have said that clear and convincing evidence is "that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *MacGuire v. Harriscope Broadcasting Co.,* Wyo., 612 P.2d 830, 839 (1980). This standard accords with that which has been adopted in a number of other jurisdictions. E.g., *People v. Taylor,* Colo., 618 P.2d 1127 (1980); *Albino v. Albino,* 279 Or. 537, 568 P.2d 1344 (1977) (a constructive trust case). In this case we note that the circumstances leading up to the decision by Mrs. Bainbrich to make the transfer to the Thomasis are not the subject of any disagreement between the parties. When the transaction is examined in the light of Mrs. Bainbrich's motive the evidence of the events which followed is sufficient to persuade a trier of fact that the truth of the contention, i.e., the Thomasis held title in trust, is highly probable.

■ The appellants have not raised any issue with respect to the availability of equitable relief in an instance such as this. However, both the district court and the appellee briefly address the question of whether the motivation of the Bainbriches with respect to the transaction should bar equitable relief. The transaction in this case was made with the actual intent to hinder, delay or defraud a potential judgment creditor, and as such was a fraudulent conveyance under the Uniform Fraudulent Conveyance Act adopted by this state. Sections 34–14–101 through 34–14–113, W.S. 1977.[2] Without question this statute represents the public policy of the State of Wyoming.

Whether the equitable doctrine of clean hands precludes the imposition of a constructive trust in such a situation was the subject of a thorough analysis and discussion by this court in *Wantulok v. Wantulok,* 67 Wyo. 22, 214 P.2d 477 (1950), reh. denied 223 P.2d 1030 (1950), 21 A.L.R.2d 572.[3] In that case, Justice Blume indicated that the issue is one involving the balancing of the policy against unjust enrichment with a policy against granting relief to a person who has entered into an illegal transaction. There is no question in this case that although the conveyance was made with the requisite unlawful purpose the claim which the Bainbriches hoped to protect the property from never matured. No harm resulted to any creditor because the Colorado judgment against Mrs. Bainbrich was reversed on appeal and was not enforceable against the property. Certainly it was not a present claim of any creditor at the time of the instant action. Under these circumstances the balancing process results in a recognition of the policy against unjust enrichment which is afforded priority and a constructive trust may be imposed. Restatement (Second), Trusts 2d, §§ 63, 422, and 444 (1959); Bogert, Trusts and Trustees, § 211 (1979); and 1 Scott on Trusts, § 63 (3rd ed. 1967).

We agree with the district court in recognizing a constructive trust with respect to this property in favor of the appellee. We affirm the judgment of the district court which imposes such a trust and requires that title to the property be quieted in favor of Mrs. Bainbrich's estate.

2.  Section 34–14–108, W.S.1977, provides:
    "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

3.  Noted in 37 Va.L.Rev. 455 (1951); 5 Wyo.L.J. 152 (1951).